# RANDOLPH *vs.* BALDWIN.

[ACTION ON BILL OF EXCHANGE, BY ENDORSEE AGAINST DRAWER.]

1. *Constitutional provisions as to appointment and election of judges of inferior courts.*—The constitutional provision contained in the amendment adopted in 1850, which requires the general assembly to provide by law "for the election of judges of the courts of probate and other inferior courts, by the qualified electors of the counties, cities, or districts, for which such courts may be respectively established," (Code, p. 49,) does not prevent the general assembly from establishing a county court, with common-law jurisdiction, and making the probate judge of the county, *ex officio,* the judge of such court.

2. *Ratification of judgments by ordinance of State convention.*—The ratification of judgments rendered during the war, by the ordinance of the State convention adopted on the 28th September, 1865, (Ordinance No. 26,) "relieves them from any objection which might be taken to them on the ground that, at the time of their rendition, the State was in a position of open hostility and war with the Federal government."

APPEAL from the County Court of Montgomery.
Tried before the Hon. DAVID CAMPBELL.

THE action in this case was commenced on the 8th February, 1862, and was founded on a bill of exchange, which was drawn by the defendant, payable to his own order, and by him endorsed to the plaintiff. Judgment by default was rendered on the 1st September, 1862; and that judgment is now assigned as error, on the ground that it was *coram non judice* and void. The cases of *Pollard v. Baldwin,* and *Scovel v. Jordan,* which were appeals from judgments of said county court of Montgomery, were argued and submitted at the same time; the judgment in the former case being rendered by default, on the 1st September, 1862; and the judgment in the latter case being rendered by *nil dicit,* on the 3d March, 1863. The county court of Montgomery, by which said judgments were rendered, was established by act of the general assembly, approved the 24th February, 1860.—Session Acts, 1859–60, p. 564. The first section of said act established the court, and declared it " an infe-

Randolph v. Baldwin.

rior court of record in said county." By the second section it was provided, that "the judge of probate in said county shall be the judge of said county court;" and the third section conferred on said court jurisdiction, concurrent with that of the circuit court, of all civil actions involving less than ten thousand dollars.

ELMORE, KEYES & MORRISSETT, for appellants.—1. The constitution gives the general assembly power to establish inferior courts of record, but requires that the judges of such courts shall be elected by the people. The legislature may enlarge the jurisdiction of a court already established, or may require the judge of one court, constitutionally established, to discharge, in some special cases, the duties of the judge of another court constitutionally established; but it has no power to create a new court, and legislate a judge into it, in express violation of the constitution. If the legislature had the power to make the probate judge of the county, *virtute officii*, the judge of the county court, because he had been elected by the people, it might, with equal reason, have made the sheriff of the county the judge of such court. Suppose the probate judge had refused to sit as judge of the county court; could he have been compelled to do so, or been impeached and removed for his refusal? If not, the anomaly is presented of a constitutional court, in which there is a judge authorized to preside, in which no one else can preside, in which he refuses to preside, and in which he can not be compelled to preside, nor removed for his refusal to preside. The constitution requires that, when a new court is established, the judge thereof shall be elected by the people—not that he shall have been already elected by them to another office. The legislature can not do indirectly that which it is forbidden to do directly.

The case of *Gaines v. Harvin*, 19 Ala. 491, has no application to this case. The question in that case was, whether a register in chancery could be authorized by the legislature to appoint trustees. It was argued, that such appointment was a judicial act; and that the statute conferring such

power on the register, who was not elected, commissioned, and qualified as a judge, was unconstitutional.

2. The acts of the probate judge, sitting as judge of the county court, can not be sustained on the ground that he was an officer *de facto*. He did not hold the office "by color of election," or by "colorable authority," but notoriously without color of title, as every one was charged with knowledge of the constitution and statutes.—*People v. Collins*, 7 Johns. 550; 6 East, 368; Cro. Jac. 552; 3 Burr. 1452; 16 Viner's Abr. 113; *Rex v. Lisle*, Andrews, 163; 11 Serg. & R. 412; 6 How. Miss. 326; *Thompson v. The State*, 21 Ala. 42.

3. At the time the judgments were rendered, the State was in a position of open hostility and war with the Federal government; and the judgments are, therefore, null and void.—*Sheffield v. Lord Castleton*, 2 Vern. 393.

4. If the judgments are nullities, being the acts of a mere usurper, they are not covered by the ratifying ordinance of the convention of 1865. But, if they are held to be within the provisions of that ordinance, then it is submitted that the ordinance itself is a nullity, being the act of an illegal body. The convention of 1865, as the court must judicially know, was not called or held under the authority of the State, nor by authority of congress, but solely by and under the authority of the president of the United States. If the State was then out of the Union, and held by subjugation, congress only could authorize the organization of a government within it; and if it was not out of the Union, a convention could only be held under authority emanating from its regular government. The court judicially knows that the convention was not sanctioned by the political department of the general government, and was called in direct conflict with the decision of the supreme court of the United States in *Luther v. Borden*, 7 How. 1.

5. If the judgments are nullities, there should be a reversal, on the authority of *Cullum v. Casey*, (1 Ala. 357,) and *Peter v. The State*, (6 How. Miss. 326,) but the causes should not be remanded. But, whether there should be such reversal, or whether the appeals should be dismissed, on that ground, is submitted to the decision of the court.

MARTIN & SAYRE, and WATTS & TROY, *contra*.—1. The legislature has power, under the constitution, to establish new courts, and to enlarge, restrict, or otherwise change the jurisdiction of existing courts. Prior to the separate organization of the probate courts, the old county courts had jurisdiction of all orphans' business, and also common-law jurisdiction; and no objection was ever raised to them on constitutional grounds. The act creating the county court of Montgomery, and making the probate judge, *ex officio*, the judge thereof, in effect restored the old system in Montgomery county. There is no incompatibility in the same person holding two judicial offices.—16 Viner's Abr. 132. The court was constitutionally established, and the judge was constitutionally elected.—*Wales v. Belcher*, 3 Pick, 508; *State v. Collins*, 19 Ark. 587; *Brien v. Commonwealth*, 5 Metcalf, 508; *State v. Chase*, 5 Har. & G. 304; 8 Gray, 1; 14 Cal. 12; 10 Iredell, 377; 4 Serg. & R. 275. Moreover, the court judicially knows that the probate judge was elected by the people in May, 1862; which was two years after the establishment of the county court, and before the rendition of these judgments.—17 Ala. 229; 20 Ala. 33; 26 Ala. 461; 27 Ala. 17; 28 Ala. 164.

2. The judge of the county court was certainly an officer *de facto*, if not *de jure*, and his acts are binding on third persons.—*Burke v. Elliott*, 4 Iredell, 362; *Burton v. Patton*, 2 Jones, (N. C.) 128; *Commissioners v. McDaniel*, 7 Jones, (N. C.) 113; *Wilcox v. Smith*, 5 Wendell, 231; *Heath v. The State*, 36 Ala. 273.

3. If the judgments are void, the appeals should be dismissed.

BYRD, J.—The only question involved in these cases is, whether a judgment rendered by the county court of Montgomery county, in 1862, is valid. The counsel for appellants contend, that the judge of that court was not elected by the people to fill the office created by the act of the 24th February, 1860, and that therefore the judgments rendered by him are void, and reversible on appeal.—Pamph. Acts, 564. To sustain this position, they insist, that the amendment to the constitution adopted in 1850 makes it the duty

of the general assembly to provide "by law for the election of judges of the circuit courts by the qualified electors of their circuits respectively, and for the elections of judges of the courts of probate, and other inferior courts, by the qualified electors of the counties, cities, or districts, for which such courts may be respectively established"; and that, therefore, so much of the act as provides that "the judge of probate in said county shall be the judge of said county court within said county," is unconstitutional, and the acts of the judge in that court are void. On the other hand, it is argued, that the judge of probate having been elected by the people of the county, after the passage of the act, and before the rendition of the judgments, his acts are valid.

No one questions the power of the general assembly to establish by law inferior courts, with common-law jurisdiction, within a county, city, or district; and should it do so, we see no good reason why the legislature can not authorize any judicial officer, who has been elected by the people, to preside in such inferior court, if such officer has been elected by the people under the jurisdiction of the court thus established. In the case of *Harvin v. Gaines,* (19 Ala. 498,) this court said: " To hold all such acts as are performed by inferior officers void, because such officers have not been commissioned or qualified as the constitution requires judges to be elected and qualified, would be to unsettle the titles of the country, and to introduce a scene of confusion which would greatly disturb the public repose." This announces a doctrine stronger than is required to sustain the validity of these judgments.

But, if it were doubtful whether the general assembly had the power to designate such an officer as above indicated to preside in such inferior court, it would be our duty to sustain the exercise of such a power. And these judgments having been ratified and confirmed by the convention of 1865, (Ordinance No. 26,) relieves them, in our opinion, from any objection which might be taken to them on the ground that, at the time of their rendition, the State was in a position of open hostility and war with the Federal government.

Judgments affirmed.