# State, *ex rel.* Vandiver *v.* Burke, Judge.

## *Quo Warranto.*

(Decided December 21, 1911. Rehearing denied February 17, 1912. 57 South. 870.)

1. *Judges; Qualifications.*—Construing section 154, Constitution 1901, in the light of conditions existing at the time of its adoption, and the judicial history of the state as evidenced by prior Constitutions and the Acts of the Legislature, it is held that said section 154 did not inhibit the legislature from requiring judges of probate courts to act as judges of the county court, even though such court was a court of record and such judges were not learned in the law, since section 139, Constitution 1901, impliedly authorizes the legislature to impose on probate judges and other persons the duties and functions of inferior courts.

2. *Same; State Court; Probate Court.*—Section 280, Constitution 1901, does not prohibit the legislature from investing probate judges with the powers and duties of judges of the county court, for section 139 of such Constitution mentions such persons as may be, by law, invested with the powers of a judicial nature, including judges of probate.

3. *Constitutional Law; Statutes; Presumption.*—The Acts of the Legislature are presumed to be constitutional until clearly shown to be unconstitutional.

4. *Same; Determination.*—A statute will not be declared unconstitutional unless shown to be so beyond a reasonable doubt, and this is especially true where many similar acts have been sustained.

5. *Appeal and Error; Review; Presentation in the Court Below.*—Where information in the nature of quo warranto was to test the right of the probate judge to exercise the duties of a county judge and alleged that there was a county court, that it was a court of record and that the probate judge was ineligible to discharge the functions of that office, and the information was dismissed upon the sustaining of a demurrer thereto, the sufficiency of the information was the only question presented for review; the question of the constitutionality of the Local Act creating the county court could not be reviewed, as it was not raised in the court below, and could not be raised on appeal.

36—175

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Information by the State on the relation of W. T. Vandiver in the nature of quo warranto directed against R. I. Burke as judge of the county court. From judgment sustaining demurrer to the information relator appeals. Affirmed.

J. B. BROWN, and CALLAHAN & HARRIS, for appellant. The pivotal point in this case is of course the status of the county court of Cullman county, for if it is a court of record, then section 154, Constitution 1901, applies. The county court is a court of record.—*Ex parte State v. Merlett*, 71 Ala. 371; *Ex parte Roundtree*, 51 Ala. 42; *Larkin v. Simmons*, 155 Ala. 274; *Cofer v. State*, 168 Ala. 172; *In re Deane*, 13 L. R. A. 229; *Ex parte Thistleton*, 52 Cal. 220; *Beech v. Woolford*, 7 Ind. 351; *Woodman v. Somersett Co.*, 37 Me. 29; *Shroyer v. Richmond*, 16 Ohio St. 455; *Wheaton v. Fellows*, 23 Wend. 375; *Bailey v. Ala.*, 219 U. S. 219; *People v. McGowan*, 77 Ill. 644; *Connor's Case*, 39 Cal. 98. The adoption of the Constitution of 1901 repealed the provision of the act creating the Cullman County Court in so far as the judge of probate was made ex officio judge of such court, and left the court without a judge. There was no doubt of the authority of petitioner to bring the suit in the name of the state without the authority of the Attorney General.—Secs. 5451, 5453 and 5459, Code 1907; *Montgomery v. State*, 107 Ala. 372. The petition was sufficient as against demurrers.—*Hamm v. The State*, 156 Ala. 651; *Frost v. State*, 153 Ala. 654; *Jackson v. State*, 143 Ala. 145. The burden was on the person holding the office to show his right and title to the office.— *Montgomery v. State, supra.* The demurrer confesses the truth of the allegation that the present holder is not

learned in the law, and he is therefore ineligible to hold it.—*Clements v. The State,* 153 Ala. 654; *Jamison v. Wiggins,* 46 L. R. A. 318. Counsel discuss the constitutionality of the act creating the County Court of Cullman County, but in view of what is said in the opinion, it is not deemed necessary to here set it out.

GEORGE H. PARKER, and JOHN C. EYSTER, for appellee. Probate courts are courts of record.—*Dozier v. Joyce,* 8 Port. 303; *Lee v. Hamilton,* 3 Ala. 533; Sec. 5353, Code 1907, Sec. 154, Constitution 1901. In common law the county court was a court incident to the jurisdiction of the sheriff, and was not a court of record.— 3 Blacks. 35. It is not a court of record under our Constitution.—Sec. 150, Constitution 1901. The judicial power was lodged in the court and not in the magistrate.—*Perkins v. Corbin,* 45 Ala. 103. The Attorney General is alone authorized to institute this suit.—Sec. 36, Code 1907; *State ex rel. Burke,* 160 Ala. 163; *Ex parte Stevenson,* 113 Ala. 85; *Ex parte State,* 71 Ala. 362. On the question of the act of the de facto judge being legal, see *Ex parte State ex rel. Attorney General,* 142 Ala. 87. As to what is meant by learned in the law, see *O'Neal v. McKenna,* 116 Ala. 620. Impeachment is the remedy and not quo warranto.—*State v. Gardner,* 43 Ala. 234.

MAYFIELD, J.—This is a statutory information, in the nature of quo warranto, brought in the name of the state, on the relation of W. T. Vandiver, against R. I. Burke, to inquire into the right and title by which the latter holds or exercises the office and functions of judge of the county court of Cullman. The proceeding is expressly authorized by chapter 128, § 5453 et seq., of the Code of 1907.

The material allegation, together with the prayer of the information, is as follows: "That R. I. Burke, who is not 'learned in the law' as required by section 154 of the Constitution of Alabama, is holding and exercising the powers and functions, and receiving the emoluments of the office of judge of the county court of Cullman county, and plaintiffs aver that the said R. I. Burke usurps, intrudes into, and unlawfully holds or exercises the powers and functions of said office. The plaintiffs therefore pray that summons issue as required by law, directed to the said R. I. Burke, commanding him to appear before the honorable, the circuit court of Cullman county, and to show cause by what right, warrant, or authority he is holding and exercising the functions and powers of said office of judge of the county court of Cullman county."

The respondent first appeared specially, and moved the court to quash the information and proceedings, on the grounds that they were not instituted by the Attorney General, but on the relation of one W. T. Vandiver, who was without authority to institute the same, which motion was heard, and overruled, by the judge to whom it was addressed. Respondent also demurred to the information, assigning the same grounds set forth in his motion to quash, and additional grounds, among which were the following: "Because the allegation therein that defendant 'usurps, intrudes into, and unlawfully holds or exercises the powers and functions of said office,' is a conclusion of the pleader, and not a statement of facts. Because the judge of probate of Cullman county is made the judge of said court, and said petition does not allege that the defendant is not judge of the probate court of Cullman county. Because this court judicially knows that this defendant, R. I. Burke, is judge of probate of Cullman county, and that

judges of the probate court were expressly exempted
and excepted from the qualifications prescribed by sec-
tion 154 of the Constitution that judges 'shall be learned
in the law.' Said petition does not show that this de-
fendant is holding and exercising the powers and func-
tions and receiving emoluments of the office of judge
of the county court of Cullman county, otherwise than
as a duty devolving upon him by virtue of his occupancy
of and holding the office of judge of probate of Cull-
man county. Said petition does not aver that said Rob-
ert I. Burke is not the judge of probate of Cullman
county. Because the functions and powers exercised
by the judge of the county court of Cullman county is
not an independent jurisdiction, but attaches to and is
a part of the duty devolving upon the judge of probate,
who is excepted and exempted by section 154 of the Con-
stitution. Because said county court of Cullman county
was existing and the duties of the judge performed by
the judge of probate at the time of the adoption of the
Constitution, and the adoption of the Constitution was
a recognition of the right of the probate judge to exer-
cise the powers and functions as presiding officer of the
county court, and the judge of probate or judge of pro-
bate court was excepted and exempted from the pro-
visions of said section 154."

The judge to whom the information was addressed
sustained the respondent's demurrer, and the relator de-
clined to plead further, and suffered final judgment;
and from such judgment the relator prosecutes this
appeal.

The proceeding in question, in the name of the rela-
tor, is expressly authorized by the statutes and Code
procedure to which we have above referred; and the ap-
peal to this court is likewise authorized by sections 5470
et seq. of the Code. It is distinguishable from that of

mandamus to a judge to control his judicial action, which was considered and decided in the cases of *State ex rel. Almon v. Burke,* 160 Ala. 163, 48 South. 1035, and *In re Stephenson,* 113 Ala. 85, 21 South. 210. In this case the proceeding is in the nature of quo warranto, and is by statute explicitly authorized to be instituted, in the name of the state, on the relation of "any person giving security for costs," whereas there is no such authorization as to mandamus proceedings against a judge. So the important and material question presented by the information and the demurrer thereto was, Can the respondent, who is probate judge of Cullman county, and is "not learned in the law," constitutionally exercise or discharge the judicial functions imposed, or attempted to be imposed, by statute, upon probate judges, as to the county court of Cullman?

It is contended by the relator that the county court of Cullman is "a court of record" within the meaning of section 154 of the Constitution, and that respondent cannot therefore constitutionally exercise, perform, or discharge the duties of such office. On the other hand, the contention of the respondent probate judge is set forth in his special grounds of demurrer. Section 154 of the Constitution of Alabama of 1901 reads as follows: "Chancellors and judges of all courts of record, shall have been citizens of the United States and of this state for five years next preceding their election or appointment, and shall be not less than twenty-five years of age, and, except judges of probate courts, shall be learned in the law." The correspondent section of the Constitution of 1875 reads as follows: "Sec. 14. The judges of the Supreme Court, circuit courts, and chancellors and the judges of city courts shall have been citizens of the United States and of this state for

five years next preceding their election or appointment, and shall be not less than twenty-five years of age, and learned in the law." Under this constitutional provision, as it was written in the Constitution of 1875, it was certain—beyond doubt—that it was not a constitutional requisite that the judge of a county court or the person exercising the powers and discharging the functions conferred upon such courts, whether a probate judge or not, should be learned in the law. Did the Constitution of 1901 work such a change as to require the officer or person discharging such functions to be "learned in the law," if such county court be, or is made, a "court of record," and the officer or person discharging such functions be the probate judge of such county? This is the serious, the important, question propounded to the circuit judge below, and to us by this appeal.

Section 139 of the Constitution which names or prescribes the tribunals in which the judicial power of the state shall be vested names the Senate sitting as a court of impeachment, the Supreme Court, and circuit, chancery, probate, and such inferior courts as the Legislature may establish; and concludes by adding the phrase, *"and such persons as may be by law invested with powers of a judicial nature,"* with certain conditions as to the establishment of such *inferior* courts, not here important to be discussed. The quoted and italicized provision of section 139 of the Constitution first appeared in the Constitution of 1875. Since the Constitution of 1875, the Legislature has had this express authority for conferring certain parts of the judicial power of the state—theretofore conferred or conferable only upon the tribunals or courts mentioned or provided for in the previous Constitutions of 1819, 1861, and 1865—upon certain designated persons. This

change of the Constitution was no doubt · suggested, and rendered proper and appropriate, if not necessary, by the first penal Code of the state, which was adopted by the Legislature in the year 1866. As is well known, this Code provided for a new system of criminal procedure in this state. Such was the undoubted purpose of the act providing for the codification, and also of the act subsequently adopting the Penal Code. See Penal Code 1866.

In the case of *Balkum v. State,* 40 Ala. 671, 675, this court spoke as follows: · "A constitutional question is presented in this case, viz., that the Legislature had not the power to establish a county court in the several counties in this state, and make the judges of probate ex officio judges of said courts, and that the county courts thus established, being independent courts of inferior jurisdiction, can be presided over by none other than separate judges elected for that purpose. This question has been in effect decided at the present term of this court. A county court of different powers and jurisdiction from the county courts as now existing was established by the Legislature for the county of Montgomery on the 24th of February, 1860; and the judge of probate in said county was made ex officio the judge of said county court. Acts 1859-60, p. 564. On appeal to this court from a judgment rendered by the said county court, the question raised in the present case was presented, and we then held as follows: 'No one questions the power of the General Assembly to establish by law inferior courts with common-law jurisdiction within a county, city, or district, and, should it do so, we see no good reason why the Legislature cannot authorize any judicial officer who has been elected by the people to preside in such inferior court, if such officer has been elected by the people under the

jurisdiction of the court thus established.'—*Randolph v. Baldwin*, 41 Ala. 305, 309." In the case of *Gaines v. Harvin*, 19 Ala. 498, this court said: 'To hold all such acts as are performed by inferior officers void, because such officers have not been commissioned or qualified as the Constitution requires judges to be elected and qualified, would be to unsettle the titles of the country, and to introduce a scene of confusion which would greatly disturb the public repose.' This announces a doctrine stronger than is required to sustain the validity of these judgments."

In the case of *Ex parte Roundtree and Orr*, 51 Ala. 42, the constitutional question as to the qualification of the judge of the circuit court ex officio to discharge the duties of the inferior court created by the Legislature for Morgan county was different from the question in this case, and from the questions involved in the two cases last above quoted from. In the *Roundtree Case* the question was that the Constitution required that all judges should be elected by the people, and that the judge provided was not elected by the people of Morgan county, but by the people of the then Fourth judicial circuit, and that this was not a compliance with the Constitution notwithstanding Morgan county was a part of the Fourth judicial circuit. That part of the act providing that the judge of the Fourth Circuit should be the judge of the inferior court created was declared void. That case was distinguished from the other cases, and therefore from this, by BRICKELL, C. J., as follows: "The decisions in the cases of *Balkum v. State*, 40 Ala. 671, and *Randolph v. Baldwin*, 41 Ala. 305, are not inconsistent with, but support, the views we have expressed. The courts, the jurisdiction of which was involved in those cases, were presided over by a judge deriving his title from an election

by the qualified voters only of the districts for which the courts were established. It is apparent, if such had not been the fact, the jurisdiction of the courts would not have been maintained."

In speaking of the power of the Legislature to establish inferior courts, and of the effect and result of the Constitution being subsequently adopted with such provisions as to inferior courts, this court in *Roundtree's Case,* above, at pages 47, 48, of 51 Ala., said: "The question was the subject of deliberate consideration in *Nugent v. State,* 18 Ala. 521, and it was declared that a court, the judgments of which were subject to revision by a higher tribunal, was an inferior court within the meaning of this clause of the Constitution, and that it it is the relation the courts bears to the superior tribunal, and not the character or extent of its jurisdiction, which is contemplated. The conclusiveness of this decision has never been questioned. It has been repeatedly acted on by the General Assembly, and acquiesced in by this court. With full knowledge of it, the same provision in the same terms was incorporated in the same Constitution. We are not at liberty therefore, to depart from it, and must pronounce it within legislative competency to ordain and establish an inferior court, clothed with the jurisdiction the statute confers on this court."

It is a well-settled canon of construction that Constitutions should be construed in the light of the conditions existing at the time of their adoption, and of the judicial history of the state. In the light of the long established usage and practice of probate judges to perform the duties pertaining to the county courts, and of the long continued and almost unvarying practice of the Legislature to confer such duties upon the probate judges, we cannot believe that it was the intention of

the Constitution makers to inhibit the continuance of the practice, particularly as no provisions were made, for abolishing such courts, or designating other persons or officers to discharge the duties and functions thereof.

"In pronouncing on the constitutionality of an act which has received the sanction of a co-ordinate department of the government—the legislative department —the courts will indulge the presumption that such act is constitutional until clearly convinced to the contrary.—*Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594; *S. & N. R. R. Co. v. Morris,* 65 Ala. 193; *Edwards v. Williamson,* 70 Ala. 145." 2 Mayf. Dig. p. 690.

It is another sound rule of construction that when called upon to pronounce the invalidity of an act of the Legislature, passed with all the forms and solemnities requisite to give it the force of law—and especially as in this case, where like acts or acts of similar kind have been repeatedly so pased by successive Legislatures—courts approach the question with very great caution, and examine it in every possible aspect, and ponder it as long as deliberation and patient attention can throw any new light on the subject, and will never declare such statutes void unless the invalidity is considered beyond reasonable doubt.

Applying these principles to the case at bar, we are constrained to hold that it was not the intention of the makers of the Constitution to render probate judges ineligible to perform the functions or discharge the duties imposed on them by the Code or by special statutes as to county courts unless they were learned in the law. The Constitution expressly excepts probate judges from the requirement of being learned in the law. It was, of course, known to the Constitution makers at the time of the framing and adoption of the Constitution of 1901 that in many of the counties the functions and

duties of the county court were being performed and discharged by the probate judge, and that in most cases they were not learned in the law. There is no express prohibition in the Constitution against the practice; and the fact that probate judges are explicitly excepted from the provision that judges of courts of record shall be learned in the law would seem to have been a recognition of the practice, if not an authorization of it. There is certainly very little (if any) more reason for requiring the judge of a county court who tries only misdemeanors to be learned in the law than there is for requiring judges of the probate courts to be so learned. The duties and functions of the probate court are without doubt of as much importance and sacredness as those of the county court; and their proper discharge requires as much legal lore as the proper discharge of those of the latter court requires. Many of the functions and duties of the county court are now, and have always been, discharged by justices of the peace, who are not required to be learned in the law, and to whom we think it unquestionable that the Constitution does not, and was not intended to apply.

Moreover, we think section 139 of the Constitution clearly authorizes the Legislature to impose upon the probate judges or other officers or persons the duties and functions of the county court. But we do not think that the fact that the county court might, for some purposes, be considered a court of record, requires that probate judges shall be learned in the law, whatever might be the result as to other persons if the county court should be considered a court of record. So far as the probate judges are concerned, it is immaterial, we think, whether the county court, the duties and functions of which they are required to perform and discharge, is or is not, a court of record. They are not

[State, ex rel. Vandiver v. Burke, Judge.]

judges of such county courts, though they, as probate judges, are required to discharge the duties thereof. They do not thereby hold two judicial offices—holding only one office, but by law being required to discharge the duties of three courts, the probate, the county, and the commissioners'.

Unless otherwise provided by special statute, it now is, and ever since 1866 has been, as obligatory upon a probate judge to perform the duties pertaining to a county court, together with those imposed upon him as a member of the commissioners' court, as it is the duties pertaining to the probate office. He is required to give two separate bonds for the faithful discharge of these duties. The probate judge might be required to give other bonds for the performance of other duties in addition. But the fact that he discharges the duties of two or more courts does not make him hold two offices in violation of the Constitution. There is in such cases a multiplicity of duties and functions, but no multiplicity of offices. If it should be considered that the probate judgeship and the county court judgeship were separate and distinct offices of profit and trust, any one person might be ineligible to hold both at the same time, and ineligible to hold the latter office unless he were learned in the law, because of sections 154 and 280 of the Constitution. We are aware that there are authorities and decisions to the effect that one officer or person cannot ex officio discharge the duties or functions of two offices of public trust and profit at the same time because violative of the constitutional provision; but we are not willing to follow these to the extent of holding that a probate judge cannot under our Constitution ex officio discharge the duties pertaining to either the commissioners' court or the county court. The practice and custom has too long prevailed,

has been sanctioned, if not expressly authorized, by too many different Constitutions and constitutional conventions, to be now stricken down. We think it not open to question that our Constitution makers intended, and that the Constitution should be interpreted to mean, that such statutes are multiplicative of duties and functions, rather than of offices. In our opinion it does not necessarily follow that, because the judge of one court is by statute required to perform certain duties and exercise certain functions pertaining to another, he thereby holds two offices, or that he is judge of both courts. The Legislature, unless prohibited, may establish a court without providing for the election or appointment of any officers thereof. It may, unless prohibited by the Constitution, prescribe that the work of a court thus created shall be performed by other officers. This is what was done when county courts were created by the Penal Code of 1866. No officers of the county court were then provided, the Code merely providing that the probate judges should do the work and business of the court so created. It was, in fact, merely taking from the circuit and the justice courts a certain part of their jurisdiction and duties, and transferring the same to the probate courts or the judges thereof. No new office was thereby created, although a new court was erected.

It is true that certain local acts creating county courts provided for separate officers, but we are speaking of the general law as to county courts, and, if the local act provided that the judge of probate should discharge the duties pertaining to the county court, then, of course, the rule would be the same, whether the local law conferred more or less jurisdiction than the general law. That this is the proper construction to be placed upon our Constitution, considered as a whole,

we feel no doubt. The Constitution expressly confers upon the Legislature the power to create courts of inferior jurisdiction (within certain limitations not necessary to be here mentioned), together with the authority to define and prescribe the powers and duties of the officers thereof; and provides that the judges of such court "shall be elected or appointed in such mode as the Legislature may prescribe." This charge was evidently devised to meet the decision of this court in *Roundtree's Case,* 51 Ala. 51. It is, as we have before said, a part of the judicial history of this state that the duties and functions of county courts have been performed or discharged by the probate judges with but few instances of exception; and that, as a matter of fact known to all men, such judges as a rule have not been learned in the law—in other words, have not been lawyers. Again, certain judicial functions from the beginning of our state government have been conferred by the Legislature upon certain persons or officers well known not to be learned in the law—as, for instance, clerks, registers, masters of the courts, and sheriffs: And evidently to obviate all doubt upon this subject the Constitution of 1875 (section 139) expressly authorized such investiture of the judicial power. As examples of legislative availment of this authority, it may be noted that by statute many judicial functions are conferred upon registers in chancery, in addition to their clerical duties, and they are made ex officio judges of the probate court, when the judge thereof is disqualified. Coroners are made both judicial and executive officers, and are ex officio sheriffs, when there is no sheriff to act. The constitutionality of these statutes has never been questioned or doubted, so far as we are advised. Nor was it ever supposed that the register or the coroner, in such cases was holding two

offices. These and similar statutes have stood too long, been sanctioned by too many new Constitutions and different Legislatures, and sustained by too many decisions of this court, to be now successfully assailed. Nor do we think it was the purpose or effect of the change in section 154 of the Constitution—whereby judges of courts of record are required to be learned in the law—to strike down these various statutes or prevent the passage of similar ones.

The Supreme Court of Massachusetts has taken the same view of a similar provision of the Constitution of that state. That Constitution provided that "judges of the court of common pleas shall hold no other office under the government of this commonwealth." The Legislature of 1843 provided that all the duties of municipal courts should be performed by the justices of the court of common pleas; and the act was held not to be violative of the constitutional provision.—*Brien v. Com.,* 5 Metc. (Mass.) 508. The court in that case said: "We think the St. of 1843, c. 7, must be understood and construed as a general and entire transfer to the court of common pleas of all criminal matters which had heretofore been cognizable by the judge of a municipal court; and therefore, if an appointment could now be made of a municipal judge, for the reason that the office has not been specially abrogated, yet the individual holding such office would exist as a judge in name only, and without any authority or jurisdiction. It seems, however, to result from the considerations we have suggested that the office of judge of the municipal court was virtually abrogated by the act transferring its duties to the court of common pleas. The result to which we have come is, therefore, that the act in question does not violate the constitutional provision contained in the amendments to the Constitution, art. 8, and is not

void for that cause." We think these remarks of the Massachusetts court applicable to the case at bar. If a judge should be elected or appointed to the county court of Cullman, without amending the general or the special statute, however learned in the law he might be, he would be a judge without a "job." We see no reason in law or in fact why the Legislature cannot by either general or special statute authorize the probate judge of Cullman county to perform the duties and to discharge the functions relating to the county court of that county; and it seems to us wholly immaterial whether or not the latter be considered a court of record, probate judges being specially excepted by the Constitution from the general requirement that judges of courts of record shall be learned in the law. Moreover, he is not judge of the county court, but judge of the probate court, who is required to do the work of the county court.

We cannot on this appeal consider or pass upon the constitutionality of the local acts of the Legislature pertaining to the county court of Cullman, for the reason that the question was not raised or passed upon by the lower court. The only ruling of the lower court complained of on this appeal was that of sustaining a demurrer to the information. The information conceded, alleged, or informed the lower court that there was a county court for Cullman county by virtue of these statutes; that it was a court of record; and that the judge of probate of that county was not "learned in the law," and that, by virtue of section 154 of the Constitution, he was therefore ineligible to perform the duties or discharge the functions of that office. The respondent demurred to this petition, the judge below sustained the demurrer, and the relator declined to amend his information or to plead further, and suffered a final judg-

ment, from which he appeals. So it is only the sufficiency of that information which we can examine on this appeal. Of course, when the relator declined to amend or to plead further, the only thing left for the judge to do was to dismiss the information or to render a judgment against the relator. The latter course, in this case, was pursued, evidently for the benefit of the relator, so that he could have the correctness of the ruling on the demurrer tested by this court on appeal. This court will never, on appeal, investigate or inquire into the constitutionality of statutes in civil cases, where the questions were not raised or passed upon below, unless the statute is necessary to the jurisdiction of this court or to that of the court below.

The only questions raised or attempted to be raised in the court below were whether or not the probate judge of Cullman county could discharge the duties of the county court of Cullman, if he was not "learned in the law," and whether or not the county court of Cullman was a court of record. The question whether or not there was a county court for Cullman was not raised nor attempted to be raised in the court below, and therefore was not decided by the judge below; and, of course, that question cannot be properly presented for the first time on this appeal. So far as the questions presented by this appeal are concerned, it is, we think, wholly immaterial whether the county court of Cullman county exists by virtue of the general, or by virtue of a special law, each providing, as it does, that the judge of the probate court shall discharge the duties and perform the functions of the county court.

We find no error in the ruling or judgment of the trial judge, and the same is in all things affirmed.

Affirmed. All the Justices concur, save DOWDELL, C. J., not sitting.