95 So.2d 390

**Ex parte Margaret GRAHAM, Director of Franklin County Department of Pensions and Security, et al.**

**8 Div. 851.**

Supreme Court of Alabama.

Feb. 21, 1957.

———◆———

John Patterson, Atty. Gen., Gordon Madison and Mary A. Lee, Asst. Attys. Gen., for petitioners.

**PER CURIAM.**

Petitioners, respondents below, seek a writ of mandamus requiring Hon. H. Neil Taylor, as Judge of the Circuit Court of Franklin County, sitting in equity, to set aside and vacate an order made by him on December 10, 1955, in that certain cause styled Susie Bianco, complainant, versus Margaret Graham, as Director of the Franklin County Department of Pensions and Security, and Individually, et al., respondents, pending in said Circuit Court, in Equity, of Franklin County, relating to the custody of a minor child, Kenneth Ronald Wright. The cause was submitted here on briefs on the petition and respondent's answer thereto.

Kenneth Ronald Wright, whose mother is Elizabeth Wright, was born on the 23rd day of December, 1951. This child was placed in the home of Tony and Susie Bianco by Mrs. Wright on the 8th day of April, 1952. Tony and Susie Bianco filed a petition for adoption of said minor child on May 27, 1952. On September 5, 1953, Judge James F. Hester, Probate Judge of Franklin County, entered an interlocutory order of adoption. On November 28, 1955, Judge Hester revoked the interlocutory order of adoption and placed the custody of the child in the Franklin County Department of Pensions and Security.

Wm. Stell, Russellville, and Warren S. Reese, Jr., Montgomery, for respondent.

On the 29th day of November, 1955, Judge Hester, as Judge of the Juvenile Court of Franklin County, entered an order placing said minor child in the custody of the State Department of Pensions and Security. This was done in response to a verified petition filed in said court by Margaret Graham as Director of the Frank-

lin County Department of Pensions and Security, which said petition alleged that the child was neglected and that an immediate hearing was required in the matter.

Tony Bianco died prior to Judge Hester's order dated November 29, 1955. On the 6th day of December, 1955, Susie Bianco filed a bill in the Circuit Court, in Equity, of Franklin County, which bill was amended on the 10th day of December, 1955, to include all of the parties bringing the petition before this Court, seeking the custody of said minor child pending a hearing of the cause.

Judge Taylor, as Judge of the Franklin County Circuit Court, sitting in Equity, on December 10, 1955, ordered the respondents to immediately restore the custody of said minor child to the complainant, Susie Bianco. Said child, not having been restored to the custody of complainant on December 16, 1955, Judge Taylor entered an order directing respondents, petitioners here, to appear on the 22d day of December, 1955, to show cause why they should not be held in contempt. On December 19, 1955, the petition presently before us was filed in the official capacity of petitioners on the relation of the Attorney General seeking a writ of supersedeas superseding and suspending the said order of the Franklin County Circuit Court, in Equity, and further seeking to supersede and suspend the order of said court issued under date of December 16, 1955, ordering the respondents (petitioners here) to show cause on the 22d day of December, 1955, why they should not be adjudged in contempt for failing to turn said child over to complainant, Susie Bianco. The petition further prayed for general relief. This Court, on December 20, 1955, issued a rule nisi requiring Judge Taylor to forthwith set aside and vacate the said order made by him on December 10, 1955, and to also enter an order vacating the order made by him on December 16, 1955, or to appear and show cause before this Court why a peremptory writ of mandamus should not issue to him as prayed for in said petition

as a part of the general prayer and further ordering said judge, respondent here, to stay all further proceedings pending in the Franklin County Circuit Court, in Equity, concerning the custody of the minor child, Kenneth Ronald Wright, until the further orders of this Court.

The briefs submitted in this court have proceeded upon the assumption that Chapter 7, Title 13, section 350 et seq., Code, prescribe the jurisdiction of the courts of Franklin County in the matter of the custody of delinquent children. But our attention has been called to sections 2 and 3 of Title 62, Code, which have application in Franklin County as controlling that question, and must be dealt with. Those statutes are codified from an Act approved July 22, 1931, Acts 1931, page 637, as amended by an Act approved November 8, 1932, Acts 1932, Ex. Sess., page 276. They applied to counties having a population basis and were called a general law with local application. Title 62 of the Code deals with local laws, and in many instances made local laws out of those called general with local application. The effect was "to freeze and limit their application to cities and towns (and counties, we may add) who had procured their enactment, or to which they were applicable at the time of their revision" (codification?). Banks v. Peek, 249 Ala. 32, 29 So.2d 418, 421.

Those acts are considered in an opinion by the Attorney General of January 10, 1936, see Vol. 2, pp. 27–28, 1936 Quarterly Report, also of October 7, 1941, see Vol. 25, pp. 21–22, 1941 Quarterly Report. Those opinions observe that in counties within the classification (now section 2, Title 62, Code), the jurisdiction of juvenile delinquents, defined in section 351, Title 13, Code, is vested exclusively in a county inferior court if one is established in that county. That is clearly expressed in the law now appearing in section 3, Title 62, Code, to which said opinions had reference.

In the same Code there is a provision in section 351, Title 13, which should be treated in *pari materia* with section 3,

Title 62, supra. It is that the probate court of the several counties "except in those counties in which special courts having exclusive jurisdiction over children within specified age limits and for the purposes declared in this chapter have been or shall hereafter be established by special acts of the legislature, shall have original and exclusive jurisdiction" of children coming within the provisions and terms of this chapter.

At the time of the adoption of those acts and at the time of the adoption of the Code, sections 2 and 3, Title 62, there was in effect a local law creating a Law and Equity Court for Franklin County, Act No. 404, approved September 28, 1923, Local Acts 1923, page 272. That Act provided that the court "shall be a court of record, and which shall have and exercise concurrent jurisdiction, authority, functions and powers now conferred or may be hereafter conferred upon the several Circuit Courts of the State, provided however, that the Law and Equity Court of Franklin County shall not have jurisdiction to try persons charged with felonies; and shall have concurrent jurisdiction with Justices of the Peace of Franklin County in all matters whatsoever". It provides for review by appeal to the Supreme Court and Court of Appeals.

Section 351, Title 13, *supra*, withdraws juvenile jurisdiction from probate courts in counties having an act conferring exclusive jurisdiction on a special court in that county. Section 3, Title 62 (applicable to Franklin County) vests exclusive jurisdiction of juvenile courts in "county inferior courts established in any such counties". When that act was passed and when it was amended, and when it was codified in the present Code, there existed in Franklin County and now exists the Law and Equity Court, referred to above. That court did not have the full jurisdiction of the circuit court.

The first important question here is whether the Law and Equity Court of Franklin County is a "county inferior court" within the meaning of section 3, Title 62, Code. That question cannot be solved solely from the language used, without reference to legal history relating to inferior courts. In every Constitution of Alabama there has been a provision for inferior courts—section 139, Constitution. The Constitution of 1901 made provision for inferior courts in lieu of justice of the peace courts in certain circumstances.— Section 168, Constitution. Questions first arose as to whether certain county courts or city courts, in which were vested a part (or all) of the jurisdiction of circuit and chancery courts, were inferior courts authorized by the predecessors of section 139 of the Constitution of 1901. Originally provision was made for a Supreme Court, circuit courts, and "such inferior courts of law and equity, to consist", etc. Later the Constitutions included chancery courts and courts of probate.—See, Constitution of 1875, Art. VI, section 1; Constitution of 1868, Art. VI, section 1, * * * Constitution of 1819, Art. V, section 1.

The question arose as to whether county or city courts, vested with the power and jurisdiction which were traditionally exercised by the circuit courts at law and by the chancery courts in equity, were *inferior* courts of law and equity within the meaning of those constitutional provisions, respectively. The case of Nugent v. State, 18 Ala. 521, was the first to be considered. It related to the City Court of Mobile. The legislature created it first as a county criminal court with full criminal jurisdiction, whose judgments were reviewable by the Supreme Court in the same manner as those in the circuit courts. Later its jurisdiction was enlarged. No provision was made for review of its judgments by the circuit court, but they were reviewable only by the Supreme Court. It was contended that it was not an inferior court authorized by the Constitution to be created and, therefore, could not withstand attack. This Court made a very careful study of the question and defined an inferior court as one whose judgments and decrees are subject to review by a higher court, and its

inferior designation did not depend upon the extent of its jurisdiction. The Court held that when the judgments of a court are reviewable by the Supreme Court it is an inferior court although it may have had the same jurisdiction as the circuit and chancery courts.

The question came up again in Ex parte Roundtree, 51 Ala. 42, with reference to the "Law and Equity Court of Morgan County". This Court referred to the same provisions of the Constitution to determine whether it was an inferior court as authorized by section 139 of the Constitution. Speaking through Brickell, J., it made a scholarly research again and found as follows:

"The division of courts, recognized at common law, was superior, or courts of general jurisdiction, and inferior, or courts of limited jurisdiction. *Superior courts, derived much of their jurisdiction from the common law. Inferior courts derived their whole existence and jurisdiction from the statutes constituting them.* Hence, nothing was intended to be without the jurisdiction of a superior court, whether of appellate or original jurisdiction, except what appeared to be so; and every presumption, consistent with the record, was indulged in favor of the regularity and validity of their judgments; *while of inferior courts, no intendment was made favorable to their jurisdiction, and a conformity to the law of their creation must have been disclosed by their records.* Such was the only division of courts at common law,—*into superior and inferior.* It followed from the character of jurisdiction the courts exercised, *and not from the subjection of the court to the appellate power of another tribunal.* In this last sense, all courts of original jurisdiction are inferior to a court exercising over them appellate power. * * *

"*This court has all the elements and all the instrumentalities of a court of record of general jurisdiction.* Within the territorial limits prescribed, it is in jurisdiction, in dignity, in machinery, in officers and process, coequal with the circuit court. It can be termed an inferior court only, because the eighth section of the statute creating it subjects it to the appellate and supervisory jurisdiction which this court can exercise over the circuit courts and courts of chancery. As above indicated, uncontrolled by the judicial exposition this clause of the constitution has received, *I would incline to the opinion, that the general assembly could not establish this court—that it is not an inferior court within the meaning of that term as used in the constitution.* The question was the subject of deliberate consideration in Nugent v. State, (18 Ala. 521), and it was declared that a court, the judgments of which were subject to revision by a higher tribunal, was an inferior court within the meaning of this clause of the constitution; *that it is the relation the court bears to the superior tribunal, and not the character or extent of its jurisdiction, which is contemplated. The conclusiveness of this decision has never been questioned.* It has been repeatedly acted on by the general assembly, and acquiesced in by this court. With full knowledge of it, the same provision, in the same terms, are incorporated in the present constitution. We are not at liberty, therefore, to depart from it, and must pronounce it within legislative competency to ordain and establish an inferior court, clothed with the jurisdiction the statute confers on this court." (Italics ours.)

A portion of the above excerpt is quoted in State ex rel. Vandiver v. Burke, 175 Ala. 561, see page 570, 57 So. 870. And in the case of State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89, 94, such courts are referred to as inferior courts again by Justice Brickell who uses the following language:

"Since the abolition of the county courts there has not been a system of inferior courts having uniformity of jurisdiction throughout the state. Such courts have been established by the general assembly, to meet the necessities and conditions of particular localities. These necessities and conditions vary, and as they varied, there has been an adaptation of the grant of jurisdiction to meet them. The present city court of Mobile was originally established as the 'criminal court for Mobile county,' and invested only with criminal jurisdiction, concurrent with that of the circuit court. Nugent v. State, 18 Ala. 521. Since, there has been a change of its title, and an addition of civil jurisdiction concurrent with that of the circuit courts, except of actions involving titles to lands, but it has not been invested with equity jurisdiction. The city court of Montgomery, originally, was clothed with criminal and civil jurisdiction (excepting from the civil jurisdiction actions involving the title to lands), concurrent with that of the circuit court. Since, it has been invested with jurisdiction concurrent with that of the court of chancery. The jurisdiction of each court is localized and limited to the particular county for which it is established. There is no necessity to refer to the variety of jurisdiction conferred on other inferior courts. The city court of Mobile and the city court of Montgomery illustrate that such courts are established, and jurisdiction conferred to meet the varying necessities and conditions of particular localities."

In the case of Ex parte State ex rel. Carmichael, 251 Ala. 57, 36 So.2d 457, the question was whether the Cherokee County Law and Equity Court was within the constitutional power granted by section 139 of the Constitution. Its jurisdiction was very similar to that of the Franklin County Law and Equity Court. This Court, following many cited cases, observed:

"It has many times been declared that it is within the province of the legislature to establish *inferior courts of concurrent* jurisdiction with that of the circuit courts and to provide for the transfer of causes from the circuit court to such inferior court. Ex parte State ex rel. Wood, 151 Ala. 574, 44 So. 635, and cases cited; Dean v. State, 100 Ala. 102, 14 So. 762, and cases cited; Polytinsky v. Wilhite, 211 Ala. 94, 99 So. 843; James v. State, 21 Ala. App. 295, 107 So. 727; Whitfield v. Saulsberry, 247 Ala. 690, 26 So.2d 93; Ex parte Kelly, 243 Ala. 184, 8 So.2d 855.

"An inferior court within the meaning of § 139 of the State Constitution, giving to the legislature the power to establish the same, *is a court whose judgments or decrees may be reviewed by an appellate tribunal, whether that tribunal be the circuit court or other appellate court.* Ex parte Roundtree, 51 Ala. 42; Nugent v. State, 18 Ala. 521.

"And, 'the Legislature has the unquestioned power to vest in inferior courts of statutory creation any of the powers or any portions of the jurisdiction of the chancery or circuit courts, to be exercised concurrently with those courts, if the latter are not completely and constitutionally supplanted. Const. 1901, §§ 148, 139, 171; State ex rel. Winter v. Sayre, 118 Ala. 1, 24 So. 89.' Ex parte Pruitt, 207 Ala. 261, 262, 92 So. 426, 427; Martin v. State, 210 Ala. 44, 97 So. 57." (Italics ours.)

It is apparent that such local court was upheld on the theory that it was an inferior court, and defined an inferior court as in the Roundtree and Nugent cases, supra.

We note that the case of Ex parte State ex rel. Carmichael (the Cherokee Law and Equity Court) was governed by the Constitution of 1901, as were the other cases

cited in that opinion with the exception of the Roundtree and Nugent cases. We make this observation to call attention to the slight change made in the Constitution of 1901 in respect to inferior courts. In all the constitutions prior to that of 1901, it is expressed as follows: "Such inferior courts of law and equity, to consist of not more than five members". In the Constitution of 1901 it is "such courts of law and equity inferior to the Supreme Court, and to consist of not more than five members". In that case this Court did not note the change in phraseology, nor do the cases with reference to other courts created since the Constitution of 1901.

We think that it is clear that a local court for a county possessing a material part of the jurisdiction of the circuit court (not in lieu of justice of the peace courts under section 168 of the Constitution) can be upheld only because it is an inferior court. There is no other authority for such a court granted by section 139 or any other provision of the Constitution. Section 139 limits legislative power in that respect. The Justices of this Court In re Opinion of the Justices, 263 Ala. 156, 81 So.2d 686, gave an opinion with reference to a proposed bill to create a Law and Equity Court for Winston County on an inquiry as to whether it violated section 139. The specific question was whether it would create a court of general jurisdiction contrary to section 139. The answer was that it would not be a court of general jurisdiction under section 139 which prohibits the establishment of a court of general jurisdiction at law or in equity or both in any one county having a population of less than 20,000. Winston County had a population of less than 20,000. The feature of section 139, there dealt with, did not appear in the Constitution until that of 1901. As section 139 now appears the courts of law and equity there authorized, must be inferior to the Supreme Court, that is, be subject to a review by the Supreme Court. Prior to the Constitution of 1901 the authority for such courts was that they be

"inferior courts," without providing to what court they must be inferior. So that under them, the court classed "inferior" could be one inferior to and reviewable by the circuit court or the Supreme Court. But under section 139 it cannot be set up unless it is reviewable by the Supreme Court. The fact that it is a court of general jurisdiction does not prevent it from being an inferior court. In counties of less than 20,000 the inferior court must not be one of general jurisdiction.

The judicial power of the State is confined within the limits prescribed by section 139 (also section 168) of the Constitution. The legislature can create no court except as there authorized. A court of law and equity, other than the circuit and chancery courts, cannot be created except as an inferior court. An essential of a law and equity court is that it must be inferior, that is subject to review by a superior court. Therefore, the right of the Franklin County Law and Equity Court to exist is that it is an inferior court. Its judge must be elected or appointed in such mode or manner as the legislature prescribes, section 153 of the Constitution, and learned in the law, section 154 of the Constitution.

It results that in Franklin County there is an inferior court established by law. If there is also in that county an inferior court in lieu of justices of the peace, we do not find it in Title 62 of the Code. But whether or not it has been created, it could be done under authority of section 168 of the Constitution. Therefore, we must determine whether the inferior court mentioned in section 3, Title 62, supra, is the law and equity court created in 1923, Local Acts 1923, page 272, as we have stated, or an inferior court if one is ever created in that county in lieu of justices of the peace.

We think the inferior court referred to in section 3, Title 62, is one which is created by authority of section 139 of the Constitution, and not one created in a certain precinct in a county in lieu of justices of the peace in that precinct. We are in accord

with the opinion of the Attorney General of October 7, 1941, supra. We find no provision for the precinct judge, section 168 to be learned in the law. But the judge of a law and equity court of a county must, we repeat, be learned in the law. Section 154, supra. The precinct inferior court judge has limitations which should not obtain with respect to a court enforcing the provisions of the Juvenile Court Act, supra, Chapter 7, Title 13, Code.

■ The Juvenile Court Act was passed at the same session of the legislature as the act creating the Franklin County Law and Equity Court in 1923. That was the only inferior court which had been created by a special act in that county so far as we can find. Section 3, Title 62, applies, by section 2, supra, to sixteen counties by name. It had previously applied on a population basis. Chilton County now has such a court and is referred to in State v. LeCroy, 254 Ala. 637, 49 So.2d 553. But it is not one of the counties mentioned in section 2, Title 62. It is our belief that section 3, Title 62, and the exception in section 351, Title 13, have reference to the Franklin Law and Equity Court as an inferior court, and that is the only court in that county which can enforce the provisions of Chapter 7, Title 13, supra.

■ Therefore, the Probate Court of Franklin County was without legal power to take jurisdiction and make an order providing for the custody of the infant in question, and the order of that court awarding the custody of the infant to the State Department of Pensions and Security is not of such effect as to prevent another court having jurisdiction from exercising it upon a proper application.

■ We understand that the general jurisdiction of the circuit court, in equity, was sought to make an award of the custody of said infant. This power is not abridged by Chapter 7, Title 13, supra, when its jurisdiction is duly sought prior to an application under that chapter to the juvenile court (now the Law and Equity Court of Franklin County). The circuit court, in equity, may proceed when its power is first invoked Tittle v. Holt, 252 Ala. 388, 41 So.2d 203; Whitfield v. Saulsberry, 247 Ala. 690, 26 So.2d 93; Ex parte Burch, 236 Ala. 662, 184 So. 694; Ex parte Pruitt, 207 Ala. 261, 92 So. 426. Those cases seem to settle the question that although the child is dependent, neglected or delinquent, the circuit court, in equity, has inherent jurisdiction in respect to its custody when that jurisdiction is invoked before that of the juvenile court is sought. Since the Law and Equity Court of Franklin County is the juvenile court of that county, and no effort has been made to invoke its jurisdiction as to the custody of the minor here involved, we think there was nothing in the way of the circuit court in equity in the exercise of its inherent power to award the custody of the minor, whether or not it is dependent, neglected or delinquent, as defined by the Juvenile Court Act, supra.

Therefore, the circuit court in equity was within its power in making the order here sought to be reviewed, and the writ of mandamus should not be awarded.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Petition for writ of mandamus denied.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and COLEMAN, JJ., concur.