Balkum v. The State.

---

## BALKUM *vs.* THE STATE.

[PROSECUTION FOR ASSAULT.]

1. *Constitutionality of county courts.*—The county courts of this State, as established by the Penal Code of 1866, and presided over by the probate judges in their respective counties, are not violative of the 11th section of the 6th article of the constitution, which requires judges of the inferior courts to be elected by the people.

2. *Assault; charge as to constituents of.*—A charge, instructing the jury that, "if the prosecutor gave up his gun to the prisoner, through fear of bodily harm, reasonably excited in his mind by the conduct or manner of the prisoner, then the prisoner might be guilty of an assault," is not erroneous. (BYRD, J., *dissenting*, held, that the charge might have tended to mislead the jury, but, when construed in connection with all the evidence, was not so manifestly erroneous as to justify a reversal on account of it.)

FROM the Circuit Court of Henry.
Tried before the Hon. H. D. CLAYTON.

THIS case originated in the county court, on the affidavit of Wiley Ward, charging that, " on the 20th December, 1866, Alexander Balkum did assault him with a stick"; and the judge of the county court thereupon issued his warrant for the arrest of the defendant, addressed to any constable. The record does not show what proceedings were had in the county court. The bill of exceptions states, that the cause was sent up to the circuit court on appeal, and was tried upon the following complaint:

" State of Alabama, ) In the Circuit Court, Spring term,
    Henry County.   }    1867.

" On appeal from the county court.

" The State of Alabama, by its solicitor, complains of Alexander Balkum, that within twelve months before the commencement of this prosecution, and since the 1st day of June, 1866, he assaulted Wiley Ward, against the peace and dignity," &c.

(Signed by the solicitor of the circuit.)

" On the trial, the State introduced Wiley Ward as a witness, who testified that, in December, 1866, he went to the house of J. W. Balkum in said county, near the residence of the defendant; that he was in conversation with said J. W. Balkum, James R. Ward, and E. J. Pitts, in the road near the gin-house of said Balkum, when the defendant came up, and commenced talking to him, by asking if he was carrying that gun for him; that he replied, that he was not; that the defendant then cursed him, and told him that he had heard he had said that he was going to shoot him; that he (witness) denied having said this; that the defendant had a stick in his hand, which he frequently changed from one hand to the other, but did not raise it, nor attempt to strike him with it; that he (witness) had a gun on his shoulder at the time; that he moved off a few steps from the defendant, and the defendant told him to 'put down that gun'; that the defendant then walked up to him, and took hold of the gun, saying, 'Give me this gun'; that witness gave him the gun, and he sat it down by a

tree; that the defendant then, being within three or four feet of witness, raised his hand as though he intended to 'grab me' (witness), and witness retreated; that the defendant then stamped his feet on the ground, as though he intended to frighten witness, and witness ran off. Said witness stated, on cross-examination, that he did not curse the defendant, and had not threatened to shoot him; that the defendant did not snatch or jerk the gun from him, but took hold of it, and witness gave it up to him; that the defendant, when he raised his hand, might have caught or struck him, and he thought that the defendant was going to lay hands on him; that he was not frightened, but knew that the defendant was a stouter man than himself, and retreated in consequence; that the defendant was not prevented from striking or seizing him, and did not run after him, nor try to catch him.

"James R. Ward, another witness for the State, testified substantially to the same state of facts, except that he said, that the defendant, after taking the gun from the prosecutor, raised his hand, and grabbed at the prosecutor, and that the prosecutor fled; and he stated on cross-examination, that the defendant did not grab at the prosecutor, but raised his hand to do so, and made a demonstration or effort in the direction of the prosecutor, and that no one prevented him from grabbing or striking the prosecutor. E. J. Pitts, a witness for the defendant, testified," in substance, to the same facts stated by the other witnesses, as to what occurred between the parties, up to the time when the prosecutor gave up his gun to the defendant; "that the defendant raised his hand, and the prosecutor ran off; that the defendant was near enough to strike him, but did not strike him, nor grab at him; that no person interposed to prevent him from striking; that there was no strife, nor scuffling, for the gun, and that the prosecutor gave it up without any resistance."

"The foregoing being all the evidence in the case, the court, after instructing the jury at the instance of the solicitor, further charged them, that if the prosecutor gave up his gun to the defendant through fear of bodily harm, reasonably excited in his mind by the conduct or manner

of the defendant, the defendant might be guilty of an assault. The defendant excepted to this charge, and then requested the court to instruct the jury, that if they believed the evidence, they must find the defendant not guilty. The court refused to give this charge, and the defendant excepted to its refusal."

W. C. OATES, for the prisoner.—1. That the affirmative charge of the court was erroneous, see *Murray v. The State,* 18 Ala. 727; *Felix v. The State,* 18 Ala. 720; *Blackwell v. The State,* 9 Ala. 82.

2. The charge asked was equivalent to a demurrer to the evidence.—*Parks v. Ross,* 11 Howard, U. S. 362; *Schulhardt v. Allen,* 1 Wallace, U. S. 359. The charge ought to have been given, because the evidence failed to show the consummation of the alleged offense.—3 Bla. Com. 120; 2 Greenl. Ev. § 83; 3 Greenl. Ev. § 59; Wharton's Amer. Crim. Law, § 1242; *Blackwell v. The State,* 9 Ala. 82; *Lawson v. The State,* 30 Ala. 15; *Johnson v. The State,* 35 Ala. 363; *Hays v. The People,* 1 Hill, 351.

3. The original affidavit and warrant, which were the foundation of the prosecution, charged an assault *with a stick;* and the averment was descriptive of the offense. *Smith v. Causey,* 22 Ala. 509; *S. C.,* 28 Ala. 655; *Lindsay v. The State,* 19 Ala. 560; *Johnson v. The State,* 35 Ala. 363. The case ought to have been tried in the circuit court, *de novo;* that is, there should have been a new trial on the same charge.—Penal Code, § 509. The "complaint" filed in the circuit court, in omitting the material averment as to the stick, made an entirely new case.

4. The whole proceeding was void. The original affidavit was made before " M. B. Green, judge of probate"; an officer who was not invested with authority to administer oaths in a criminal proceeding. The warrant of arrest was issued by " M. B. Green, county judge," and not by the judge of the county court. If the affidavit and warrant, or either of them, was unauthorized by law, the defendant could only have been tried upon an indictment or presentment by a grand jury.—Revised Constitution, art. I, §§ 7, 8, 9.

5. The whole proceeding was void, because the county courts, as established by the Penal Code of 1866, are unconstitutional. The constitution requires (art. vi, § 11), that the judges of inferior courts shall be elected by the people. The judges of the county courts, as established by the Penal Code of 1866, were legislated into office, without any election by the people. When the probate judges were elected by the people, their constitutional jurisdiction extended to probate and orphans' business; and it is to be presumed that the people, in electing them, were influenced in some degree, if not entirely,.by their supposed qualifications for that kind of business. If the legislature could make those officers judges of the county court, and invest them with criminal jurisdiction, which the people never conferred on them; by parity of reasoning, they might confer judicial power on the sheriff, the tax-collector, or any other officer elected by the people.

Jno. W. A. SANFORD, Attorney-General, *contra.*—1. An assault is the commencement of an act, which, if not prevented, would produce a battery.—*Lawson v. The State,* 30 Ala. 14; *Johnson v. The State,* 35 Ala. 363. When the defendant impressed the prosecutor with a well-grounded apprehension of imminent peril, the offense was consummated.—1 Bishop's Criminal Law, § 409, and authorities cited; 2 *ib.* §§ 36–7.

2. The charge asked by the prisoner was properly refused, because the evidence was susceptible of a different construction from that placed upon it by the charge.—*Stanley v. Nelson,* 28 Ala. 514.

JUDGE, J.—A constitutional question is presented in this case—viz., that the legislature had not the power to establish a county court in the several counties in this State, and make the judges of probate *ex officio* judges of said courts; and that the county courts thus established, being independent courts of inferior jurisdiction, can be presided over by none other than separate judges elected for that purpose.

This question has been, in effect, decided at the present

term of this court. A county court, of different powers and jurisdiction from the county courts as now existing, was established by the legislature for the county of Montgomery, on the 24th of February, 1860; and the judge of probate in said county was made, *ex officio*, the judge of said county court.—Acts 1859–60, p. 564. On an appeal to this court, from a judgment rendered by the said county court, the question raised in the present case was presented; and we then held as follows: "No one questions the power of the general assembly to establish by law inferior courts with common-law jurisdiction, within a county, city, or district; and should it do so, we see no good reason why the legislature cannot authorize any judicial officer, who has been elected by the people, to preside in such inferior court, if such officer has been elected by the people under the jurisdiction of the court thus established."—*Randolph v. Baldwin*, at the present term.

Similar legislation to that we are considering is not of recent origin, and has not been unfrequent in this State. At one period, the judges of the county courts, as then established, having common-law jurisdiction to a limited extent, were also required to keep in their respective counties a separate court of record, to be called "*The orphans' court*", which was vested with full jurisdiction of all testamentary and other matters pertaining to an orphans' court, or court of probate. So, too, a court of record has long been established in each county of the State, styled, "*The court of county commissioners*", of which the judge of probate is made the principal judge, and which has jurisdiction of county matters, in no way connected with the jurisdiction of a probate judge as such; and other instances might be cited, in which jurisdiction of matters properly pertaining to one court has been conferred by the legislature upon another, for concurrent exercise.

The act in question is absolutely binding upon us, until it is made unquestionably to appear that the legislature have mistaken their powers, and a clear incompatibility between the constitution and the law is established. We are unable to perceive that such incompatibility exists. The constitution gives to the general assembly the power

to establish courts of probate, "for the granting of letters testamentary and of administration, and for orphans' business"; but there is no prohibition against conferring upon such courts judicial cognizance of matters which are also within the jurisdiction of other courts.

2. We next proceed to inquire, whether the court below erred in the charge given to the jury, and in refusing to charge as requested. The charge of the court, it is true, is limited in terms to that portion of the transaction between the prosecutor and the defendant, which relates to the giving up of the gun by the former to the latter; but it was left to the jury to determine, under the evidence, whether or not the gun was given up by the prosecutor, "through fear of bodily harm, reasonably excited in his mind by the conduct or manner of the defendant." If it was thus given up, the conduct of the defendant amounted to a *coercion* of its delivery, which, under the authorities, is an assault. It matters not that the gun was not delivered in consequence of *threats* by "*word of mouth.*" It is a trite but true saying, that "actions speak louder than words"; and if the "conduct or manner" of the defendant produced a reasonable belief in the mind of the prosecutor that bodily harm would be inflicted upon him, if he did not deliver up his gun pursuant to the unlawful demand of the defendant, and the prosecutor yielded to such unlawful demand through fear, both reason and authority unite in pronouncing such coercion an assault. The effect upon the prosecutor of the "conduct or manner" of the defendant on the occasion, was a question of fact, *exclusively for the jury*, with whom the court very properly left it.—See *Richels v. The State,* 1 Sneed, 606.

The case of *Smith v. The State,* (7 Humphreys, 43,) is a direct authority in support of the correctness of the position announced, that the *manner* of a person charged with an assault may be sufficient evidence as to what was his intent in the transaction, even though threatening language in terms, and direct acts of hostility, be not resorted to. In that case, the defendant was indicted for an assault and false imprisonment. He was the keeper of a public ferry, and as such had carried over the Chucky river one Rodgers,

with his horse and carryall. When over, the defendant demanded of Rodgers ferriage, which the latter said had been paid. The defendant told Rodgers he should not go on until he had paid the ferriage. Some other conversation ensued, when Rodgers paid the ferriage demanded. Rodgers testified on the trial, that the defendant "*had not touched his bridle or his horse;* that he *made no effort to strike or touch his person or his horse;* and that he *made no threats of personal violence;* but that he was *afraid of a difficulty with the defendant.* The defendant told Rodgers, after he had paid the charges, that if he had not paid it, he had determined to have put his horse and carryall back into the boat, and to have carried them back. The defendant was found guilty in the court below, and the judgment was affirmed. The supreme court of Tennessee, in their opinion, say: "Although the defendant did not take hold of the prosecutor, or offer violence to his person, *yet his manner may have operated as a moral force to detain the prosecutor.* And this appears the more probable, as, after the affair was settled, the prosecutor inquired, what defendant would have done if he had not paid the ferriage demanded; to which the defendant replied, 'he would have put his carryall and horse back into the boat, and taken them across the river again.' As this determination existed in his mind, *it doubtless was exhibited in the manner of the defendant, and thus operated upon the fears of the prosecutor.*"

In the case before us, the defendant had as much the right to coerce the delivery to him of the prosecutor's hat, or his coat, or to compel him to strip, on the pretext that he was not dressed in the fashion, as he had to coerce the delivery of the prosecutor's gun; and it would be a reproach to the law, if one could coerce the performance of acts like these, through fear of bodily harm, excited in the mind of his victim, though not by actually striking at him, or by the use in terms of threatening language, and still be guilty of no offense. But the law is not so unreasonable as to permit one who thus breaks down the barrier it has erected for the security of the citizen, to go free of punishment.

We held, in the case of *The State v. Johnson,* (35 Ala. 363,)

which case is fully sustained by the authorities cited in the opinion of the court, that it is not necessary, to constitute an assault, that the defendant must actually *strike at* the person on whom the assault is charged to have been committed. "Raising a stick, with intention to strike, so near to the party assailed as to endanger his person; and forcing him under a well-grounded apprehension of personal injury to strike in self defense, or to save himself by flight, is an assault, for which the party may be punished." So it was held, in the case of *The State v. Sims*, (3 Strobhart, 137,) that to ride a horse so near to one as to endanger his person, and create a belief in his mind that it was the intention of the rider to ride over him, would be an assault; and this, whether the defendant *intended* to ride upon the prosecutor or not. In the case of *Hays v. The People*, (3 Hill, N. Y.) it was held by the supreme court of New York, Cowen, J., delivering the opinion, that to constitute an assault, "there need not be even a direct attempt at violence; but any indirect preparation towards it, under the circumstances mentioned, such as drawing a sword or bayonet, or even laying one's hand upon his sword, would be sufficient;" and the learned judge quotes authorities, both English and American, to sustain his conclusion. So, where the defendant raised an axe, within striking distance of another, and said, "Give up the gun, or I'll split you down;" and the person at the time did not give up the gun, but proposed some arrangement, upon which the defendant let the axe down, it was held, that he was guilty of an assault. Judge Gaston, in delivering the opinion of the court, said: "To hold that such an act, under such circumstances, was not an offer of violence,—not an attempt to commit violence—would be, we think, to outrage principle, and manifest an utter want of that solicitude for the preservation of peace, which characterizes our law, and which should animate its administration."—*State v. Morgan*, 3 Iredell, 186.

Without further comment, we refer to the following authorities, as sustaining in principle the charge of the court in this case: 2 Bishop's Cr. Law, §§ 49–50; *State v. Benedict*, 11 Vermont, 236; *Bloomer v. The State*, 3 Sneed, 66;

*The State v. Taylor*, 3 Sneed, 662; *Keefe v. The State*, 19 Ark. 190; *State v. Davis*, 1 Iredell, 125. And see authorities cited in *Johnson v. The State*, 35 Ala. 363.

It follows, that the court did not err in the charge given, nor in the refusal to charge as requested.

Judgment affirmed.

BYRD, J.—I am not prepared to go to the length of *Smith v. The State*, (7 Humph. 43,) or any other case cited by the court which goes to the same extent. The case of *The State v. Johnson* (35 Ala.) goes as far as I conceive the standard authorities would justify. I assent to the result attained by the court, as to the charge given by the court below; but upon the principle, that the charge must be construed with reference to all the evidence, and when so construed in this case, although the charge might have tended to mislead the jury, yet it did not *so clearly* do so as to authorize us to reverse the judgment of the court. It was competent for the defendant to have asked such a charge as would have corrected any misapprehension which the jury might have entertained from the generality of the language used in the charge given.