# Chapman *v.* The State.

*Indictment for Assault and Battery.*

78  463
107  133
78  463
129  482

1. *What constitutes assault.*—Presenting and aiming an unloaded gun at a person within shooting distance, in such manner as to terrify him, he not knowing that the gun is not loaded, will not support a conviction for a criminal assault, although it may support a civil action for damages.

[Chapman v. The State.]

FROM the Circuit Court of Barbour.

Tried before the Hon. H. D. CLAYTON.

H. D. CLAYTON, Jr., for the appellant, cited *Johnson v. The State*, 35 Ala. 363; *Lawson v. The State*, 30 Ala. 14; *Tarver v. The State*, 43 Ala. 354; *Blackwell v. The State*, 9 Ala. 79; *Shaw v. The State*, 18 Ala. 547.

THOS. N. MCCLELLAN, Attorney-General, for the State, cited *Bloomer v. The State*, 5 Sneed, 68; *Smith v. State*, 7 Humph. 43; *Hays v. People*, 1 Hill, 351; *Com. v. White*, 110 Mass. 407; *Com. v. McLaughlin*, 5 Allen, 507; 10 Iowa, 130; 9 C. & P. 483; *Balkum v. State*, 40 Ala. 671; 2 Bish. Cr. Law, § 53; 2 Whart. C. Law, § 1244.

SOMERVILLE, J.—The defendant was indicted for an assault and battery upon the person of one McLeod, and was convicted of a mere assault.

It may be that, if the indictment had been for robbery, the facts in evidence would have sustained the allegation of an assault, which, in cases of that nature, is often merely constructive; for every attempt at robbery, or to commit rape, or to do other like personal injury, involves within it the idea of an assault, either actual or constructive.

The present conviction, however, can be sustained only on the theory, that it was an assault for the defendant to present or aim an unloaded gun at the person charged to be assaulted, in such a menacing manner as to terrify him, and within such distance as to have been dangerous had the weapon been loaded and discharged. On this question, the adjudged cases, both in this country, and in England, are not agreed, and a like difference of opinion prevails among the most learned commentators on the law. We have had occasion to examine these authorities with some care, on more occasions than the present; and we are of the opinion that the better view is, that presenting an unloaded gun at one who supposes it to be loaded, although within the distance the gun would carry if loaded, is not, without more, such an assault as can be punished criminally, although it may sustain a civil suit for damages. The conflict of authorities on the subject is greatly attributable to a failure to observe the distinction between these two classes of cases. A civil action would rest upon the invasion of a person's "right to live in society without being put in fear of personal harm;" and can often be sustained by proof of a negligent act resulting in unintentional injury.—*Peterson v. Haffner*, 26 Amer. Rep. 81; Cooley on Torts, 161. An indictment for the same act could be sustained only upon satisfactory proof of criminal in-

[Chapman v. The State.]

tention to do personal harm to another by violence.—*State v. Davis*, 1 Ired. Law, 125; s. c., 35 Amer. Dec. 735. The approved definition of an assault involves the idea of an inchoate violence to the person of another, with the present means of carrying the intent into effect.—2 Greenl. Ev. § 82; Roscoe's Cr. Ev. (7th Ed.) 296; *People v. Lilley*, 43 Mich. 521. Most of our decisions recognize the old view of the text-books, that there can be no criminal assault without a present intention, as well as present ability, of using some violence against the person of another.—1 Russ. Cr. (9th Ed.) 1019; *State v. Blackwell*, 9 Ala. 79; *Johnson v. State*, 43 Ala. 354. In *Lawson v. State*, 30 Ala. 14, it was said that, "to constitute an assault, there must be the commencement of an act, which, if not prevented, would produce a battery." The case of *Balkum v. The State*, 40 Ala. 671, which was decided by a divided court, probably does not harmonize with the foregoing decisions.

It is true that some of the modern text-writers define an assault as an *apparent* attempt by violence to do corporal hurt to another, thus ignoring entirely all question of any criminal intent on the part of the perpetrator.—1 Whart. Cr. Ev. § 603; 2 Bish. Cr. Law, § 32. The true test can not be the mere tendency of an act to produce a breach of the peace; for opprobrious language has this tendency, and no words, however violent or abusive, can, at common law, constitute an assault. It is unquestionably true, that an apparent attempt to do corporal injury to another may often justify the latter in promptly resorting to measures of self-defense. But this is not because such apparent attempt is itself a breach of the peace, for it may be an act entirely innocent. It is rather because the person who supposes himself to be assaulted, has a right to act upon appearances, where they create reasonable grounds from which to apprehend imminent peril. There can be no difference, in reason, between presenting an unloaded gun at an antagonist in an affray, and presenting a walking-cane, as if to shoot, provided he honestly believes, and from the circumstances has reasonable ground to believe, that the cane was a loaded gun. Each act is a mere menace, the one equally with the other; and mere menaces, whether by words or acts, without intent or ability to injure, are not punishable crimes, although they may often constitute sufficient ground for a civil action for damages. The test, moreover, in criminal cases, can not be the mere fact of unlawfully putting one in fear, or creating alarm in the mind; for one may obviously be assaulted, although in complete ignorance of the fact, and, therefore, entirely free from alarm.—*People v. Lilley*, 43 Mich. 525; s. c., 1 Crim. Law Mag. 605. And one may be put in fear under pretense of begging, as in *Taplin's case*, occurring

30

[Chamblee v. The State.]

during the riots in London, decided in 1780, and reported in 2 East P. C. 712, and cited in many of the other old authorities. These views are sustained by the spirit of our own ad-_ _judged cases, cited above, as well as by the following authorities, which are directly in point.—2 Greenl. Cr. Law Rep., and *note*, on pp. 271-275, where all the cases are fully reviewed; 2 Addison on Torts (Wood's Ed. 1881), § 788, *note* 1, pp. 4–7; Roscoe's Crim. Ev. (7th Ed.) 296; 1 Russell Cr. (9th Ed.) 1020; *Blake v. Barnard*, 9 C. & P. 626; *Reg. v. James*, 1 C. & P. 530; *Robinson v. State*, 31 Tex. 170; *McKay v. State*, 44 Tex. 43; *State v. Davis*, 35 Amer. Dec. 735.

The opposite view is sustained by the following authors and adjudged cases: 7 Bish. Cr. Law (7th Ed.), § 32; 1 Whart. Cr. Law (9th Ed.), §§ 603, 182; *Reg. v. St. George*, 9 C. & P. 483; *Com. v. White*, 110 Mass. 407; *State v. Shepard*, 10 Iowa, 126; *State v. Smith*, 2 Hump. 457. See, also, 3 Greenl. Ev. (14th Ed.) § 59, *note b;* 1 Arch. Cr. Pr. & Pl. (Pomeroy's Ed.) 907, 282-283; *State v. Benedict*, 11 Vt. 238; *State v. Neely*, 74 N. C. 425; s. c., 21 Amer. Rep. 496.

The rulings of the court were opposed to these views; and the judgment must therefore be reversed, and the cause remanded.