GOVERNMENT OF THE VIRGIN ISLANDS

v.

ROGER F. MORAN, Defendant

Criminal No. 2668-1963

Municipal Court of St. Thomas and St. John

December 6, 1963

JOSEPH TAUBER, ESQ., Assistant Attorney General, *for Government*

DUDLEY, HOFFMAN & GRUNERT, Charlotte Amalie, St. Thomas, Virgin Islands (GEORGE DUDLEY, ESQ., of counsel), *for defendant*

MICHAEL, *Municipal Judge*

The defendant, Roger Moran, is charged with exhibiting a deadly weapon, a gun, in the presence of several persons, not in necessary self-defense, in a rude, angry and threatening manner at the Bolongo Estate where a strike was taking place.

The evidence of the prosecution is to the effect that the defendant, Roger Moran, had pointed a rifle at the men below who were 150 feet, or thereabout, from the construction site, thereby putting them in fear.

Several of the prosecution witnesses testified that not only did the Defendant point or aimed the gun at them, but before doing so he cleaned and apparently loaded it, and in doing so the noise usually made by guns in opening and closing the mechanism was heard. They also testified that after he had pointed the gun at them he had a camera in his hand and seemed to be in the act of taking pictures.

In his defense, the Defendant admitted that he did have a gun in his hands; that he wiped it in the presence of the men, but it was a "toy gun" and he *did not* point it at

them; that the object of having the gun was for the purpose of "bluffing" the men until the police should arrive because of some incident which occurred on the previous day while the men were allegedly picketing. The Defendant also testified that before he started to take the pictures he delivered the "toy gun" to one of his employees, wrapped in a cloth, to be put away in his vehicle.

During the hearing a toy gun was introduced in evidence by the Defendant.

One of the Defendant's witnesses corroborated his testimony that he was given a long object wrapped in a cloth to be put away, but that he did not know what it was.

The prosecution contends that the gun used by Defendant Moran was not a toy gun, but a real gun. It bases its belief on the grounds that the Defendant did not produce the gun when the Police arrived on the scene, which was about five minutes after the alleged assault, and complaint thereof had been made to the Police; that if it were a toy gun, the Defendant would not have had to conceal it from one of his employees by wrapping it in a cloth; and that in 1959 the Defendant did have a 30-30 Winchester rifle. The prosecution also contends that if the Court should find that the gun was not loaded or it was a toy gun, that the Defendant should be found guilty of the lesser offense of assault.

The Defendant seeks to justify his action on the grounds that the pickets were on private property; that the picketing was not peaceful; that there was no labor dispute; that it was illegal, and as a consequence he had the right to protect the property and the men who were his employees from molestation. Also, that since the gun was a toy gun, there was no assault with a deadly weapon, and that under local law the Defendant could not be convicted of the lesser offense of assault as the prosecution contends.

After hearing the testimony on both sides, it is the findings of the Court that a gun *was* pointed at the men

below; that after the mechanism of the toy gun in evidence was tested in Court, the sound made thereby could be mistaken for that of a real gun; and that the manipulation of the gun by the Defendant before pointing it was of such a nature as to put them in fear.

■ It is the opinion of the Court, however, that the charge of exhibiting a deadly weapon has not been made out beyond a reasonable doubt. It is possible that the gun used by the Defendant was a real gun and perhaps loaded, but the distance the pickets were from the Defendant, although reachable by a shot from the kind of gun it appeared to them to be, it could not be distinguished beyond a reasonable doubt as to what kind of gun it was.

■ The Court does not believe, nevertheless, that in order to make out the charge of exhibiting a gun, it is absolutely necessary for the prosecution to produce the gun as argued by the Defendant. If that were so, anyone could threaten another with a gun close enough so that there could be no mistake as to its identity, and after concealing it, argue that the offense was not made out because the prosecution could not produce it.

Having made the finding that the Defendant *did* point a gun, the toy gun produced in evidence though it might have been, the legal consequence will now be considered.

It appears to the Court that there are two basic questions involved in this case, to wit: First, whether pickets on property alleged to be private, but is used by anyone who may have occasion to do so, are trespassers against whom apparent force, such as has been found in this case by the Court, may be used before a request is made to depart and is refused; and, second, whether pointing a gun, unloaded or a toy gun, but unknown to the party or parties who are put in fear, is an assault.

Answering the first question in the negative, the prosecution contends that the pickets were not trespassers, inasmuch as there was a labor dispute in progress. While

382

the cases cited on this point do not go to the precise question and situation before us, they do discuss the relative rights of labor and management in labor relation cases.

Answering the question in the affirmative, the cases cited by the defense in the first point of his four-point argument discuss illegal picketing. But even if it were conceded that the picketing was illegal, which the Court does not find, the relief sought in those cases was one of injunction, and therefore not in point.

██ As to the second point in his Memorandum claiming the Defendant was justified in doing what he did, the cases cited cover the general law in defense of one's property. The case before us is distinguishable in that the "private property" was used by persons who had occasion to do so, and if the pickets were considered trespassers, they should have been requested to leave before pointing a gun at them. It is only when a trespasser, otherwise peaceful (as the pickets were at the time of the incident) refuses to depart upon request to do so may such force be used as is necessary to accomplish that end. Am. Jur. (2) Sec. 80, Pg. 72; State v. Montgomery, 22 N.W. 639; People v. Hubbard, 220 Pac. 315; People v. Root, 170 Ill.App. 608.

During the trial of the case the Court asked several witnesses for the defense whether the Defendant or his foreman said anything to the pickets as to their presence there along the road at any time, and all answered in the negative. It is clear, therefore, that no request was made of them to depart.

██ As to the third point of the defense covering the question of deadly weapon, the Court has already found that there was no assault with a deadly weapon.

In the fourth point of the defense, that the Defendant may not be found guilty of the lesser offense of assault, the defense cites numerous cases to that purport. But

there are Courts which hold just the opposite. It is on this point that there is disharmony among them. In this jurisdiction it is a case of first impression.

Commenting on the division of the courts on this question, we find the following in 79 ALR (2) page 1415:

"A number of courts have recognized that in the absence of proof that the gun used, as a firearm solely, in an alleged criminal assault was loaded or where the fact was shown that the gun was unloaded, the assault is not made out."

and on page 1417 we also find the following:

"In a number of cases the courts have rejected the contention that an 'assault' could not be committed with an unloaded gun."

After reading a number of the cases on both sides, it appears to this Court that, under our law, the better view is that the lesser offense is made out when one points a gun menacingly at another who is put in fear, as in this case, even if the gun turns out to be unloaded. To this Court a toy gun such as the one in evidence would have the same effect if at the time the party or parties menaced thought it was a real gun and loaded.

Violation of 14 V.I.C. sec. 621 with which the Defendant is charged states as follows:

"Whoever not in necessary self-defense, and in the presence of two or more persons, draws or exhibits any deadly weapon in a rude, angry and threatening manner, . . . shall be fined. . . ."

Assault is defined in 14 V.I.C. sec. 291 as follows:

"Whoever makes a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery — commits an assault."

In the light of the above sections, can it be said that someone pointing what seems to be a gun at another at a distance which appears reachable to him is not either an attempt to commit a battery, or a threatening gesture SHOWING in itself an immediate intention coupled with an ability to commit a battery?

While the Defendant is not charged with it, the Court

believes 14 V.I.C. sec. 2251, which makes it a crime to attempt "to use against another an *imitation* pistol" (emphasis supplied) throws some light as to the intention of the Legislature in connection with imitation weapons, for if the person menaced knows that the weapon used is an imitation pistol, there would be no offense, the same as if the pickets knew it was an imitation gun, there would be no offense.

■ At the time the gun, or imitation gun was pointed at the pickets, there was no threat of violence, so that it was [not] necessary for the Defendant to defend himself, the property, or his employees.

■ What happened the day before (the Defendant's alleged assault in the first degree, of which the Court found probable cause; the assault on one of his employees as an aftermath of Defendant's action, but which was unjustified, and of which charge the Defendant in that case was found guilty) was no justification for the Defendant's action in pointing the gun from where he was at the construction site at the pickets in the road below.

The case of Price v. United States, 156 Fed. 950, sums up the position of this Court in the present case as to the lesser offense. At page 952, the Court said:

"But while the evidence does not show that the Defendant committed the crime of an assault with a dangerous weapon, it is yet sufficient to prove him guilty of the minor offense of assault. It is true, as contended by counsel for appellant, that it has been adjudged in many cases that pointing an unloaded pistol at another accompanied by a threat to shoot, does not constitute an assault. This was so held in Klein v. State, 9 Ind. App. 161, 36, NE 763, 53 Amer. State Report 354; Chapman v. State, 78 Ala. 463, 56 Amer. Report 42; and

People v. Sylva, 143 Cal. 62, 76 Pac. 814, relied upon by defendant, and other cases may be cited to the same effect, the cases from Indiana and California are based upon a statute enforced in each of these States, defining an assault as 'an unlawful attempt coupled

with a present ability to commit a violent injury upon the person of another'.

Chapman v. State, 78 Ala. 463, 56 Amer. Report 42, does not rest upon any statute, but lays down the broad rule that there can be no criminal assault without a present intention as well as present ability, of using some violence against the person of another.

We do not concur in this statement of the law, and in our opinion the true rule is stated by Mr. Bishop in his work on Criminal Law (Vol. II, 3d Add'n, Sec. 53), in the following language:

'There is no need for the party assailed to be put in actual peril, if only a well-founded apprehension is created; for his suffering is the same in the one case as in the other, and the breach of the public peace is the same. Therefore, if within shooting distance one menacingly points at another with a gun, apparently loaded, but not loaded in fact, he commits an assault the same as if it were loaded. There must in such a case be some power actual or apparent, of doing bodily harm; but apparent power is sufficient.'

In Commonwealth v. White, 110 Mass. 407, the Court instructed the jury as follows:

'That if the Defendant, within shooting distance, menacingly pointed at Harrington a gun, which Harrington had reasonable cause to believe was loaded, and Harrington was actually put in fear of immediate bodily injury therefrom and the circumstances of the case were such as ordinarily to induce such fear in the mind of a reasonable man, that then an assault was committed, whether the gun was in fact loaded or not.'

This instruction was upheld by the Supreme Court of Massachusetts in the following manner:

'It is not the secret intent of the assaulting party, nor the undisclosed fact of his ability or inability to commit a battery, that is material; but what his conduct and the attending circumstances denoted at the time to the party assaulted. If to him they indicate an attack, he is justified in resorting to defensive action. The same rule applies to the proof necessary to sustain a criminal complaint for an assault. It is the outward demonstration that constitutes the mischief which is punished as a breach of the peace.'

The Supreme Court of New Hampshire also upheld an instruction somewhat similar with respect to an unloaded gun as follows:

'We have a right to live in society without being put in fear of personal harm. But it must be a reasonable fear of which we com-

plain, and it surely is not unreasonable for a person to entertain a fear of personal injury when a pistol is pointed at him in a threatening manner, when, for aught he knows, it may be loaded and may occasion his immediate death. The business of the world could not be carried on with comfort if such things could be done with impunity.' "

From all of the above this Court finds the Defendant, Roger Moran, guilty of the offense of assault.