404 So.2d 589 (1981)
The CITY OF BIRMINGHAM, A Municipal Corporation
v.
Russell Lee THOMPSON.
79-787.
Supreme Court of Alabama.
August 28, 1981.
Rehearing Denied September 25, 1981.
Milford G. Bass, Jr., James K. Baker, and Herbert Jenkins, Jr., Birmingham, for appellant.
D. Leon Ashford and John W. Haley, Birmingham, for appellee.
BEATTY, Justice.
The question is whether, under the following facts, the City of Birmingham (Birmingham) is liable for a tort allegedly committed by one of its employees. We hold that Code 1975, § 11-47-190,[*] the statute governing municipal tort liability, permits plaintiff Thompson's cause of action, and we affirm the judgment in his favor.
Plaintiff was incarcerated in the Birmingham City Jail on the charge of destroying private property. While plaintiff was in jail, he was allegedly beaten by police officers for refusing to change into a prison uniform. Plaintiff brought suit against Birmingham, alleging that an assault and battery was committed on him by a Birmingham police officer and further alleging that agents, servants, or employees *590 of Birmingham were present or in the vicinity of the alleged assault and battery, and that those persons negligently caused or negligently allowed the assault and battery.
At the close of both plaintiff's and defendant's case, defendant moved for a directed verdict. As grounds, defendant argued, among other things, that the evidence failed to establish that the injury was occasioned by the "neglect, carelessness or unskillfulness of some agent, officer or employee of the [defendant] engaged in work therefor and while acting in the line of his duty." Both motions for directed verdict were denied.
Plaintiff agreed that the case would not be submitted to the jury on the theory that Birmingham's agents or servants negligently caused or allowed the battery, but the case was submitted to the jury with instructions including the following:
So, basically, as I understand the Plaintiff's claimthe attorneys will have an opportunity to take exception to my remarks in just a momentthe Plaintiff's theory, as advanced by his pleadings, is either one or two propositions. First of all, even that if you will find that the Plaintiff failed to carry out a reasonable request or order of the Defendant in the operation of its jail facility, then the defendant would not be entitled to use any more than what would be considered reasonable force to carry out its rules and regulations.
The second option, or second theory advanced by the Plaintiff in this, is that even after a full and fair consideration of all evidence, if you are reasonably satisfied that the force used by the Defendant's agent, Officer Taylor, was in the process of repelling or meeting force exerted by the Plaintiff, still, in that event, the defendant would not be entitled to use any more force than was reasonably necessary to repel the force of the Plaintiff.
. . . .
It is very difficult, and I don't know how you define excessive force, but I'd say excessive force is more force than is reasonably necessary under the circumstances for the defendant to carry out its rules and regulations dealing with the proper management of its prisoners who are under its care, custody and control.
The jury returned a verdict for plaintiff in the amount of $25,000. Defendant filed a motion for JNOV, or, in the alternative, for a new trial, assigning as one ground the failure of the evidence to establish that plaintiff's injury was caused by the neglect, carelessness or unskillfulness of Birmingham's agent, officer or employee. The trial court denied defendant's motion and defendant appealed.
The case was submitted to the jury with instructions regarding not only the officer's privilege to use force against his prisoner, but also the consequences of the officer's exceeding the privileged force. Plaintiff asserts that an officer using excessive force against a prisoner has committed a negligent tort which falls within the definition of "unskillfulness."
We agree with that conclusion, even though it means that a battery may be committed by "unskillfulness," i. e., a form of negligence.
In the early case of Chapman v. State, 78 Ala. 463 (1885) the question was whether the presenting of an unloaded gun at a person in such a menacing manner as to terrify him and within such a distance as to have been dangerous had it been loaded, would support a criminal charge of assault. Calling attention to the conflict of authorities due to the failure to observe the distinction between civil and criminal cases, this Court held that a civil, but not a criminal, action would lie:
A civil action would rest upon the invasion of a person's "right to live in society without being put in fear of personal harm;" and can often be sustained by proof of a negligent act resulting in unintentional injury. [Citations omitted.] An indictment for the same act could be sustained only upon satisfactory proof of criminal intention to do personal harm to another by violence. [Citations omitted.]
*591 And in Thomason v. Gray, 82 Ala. 291, 3 So. 38 (1887), an action of assault and battery, the following jury charges were given upon plaintiff's request:
(1) "Even if the jury believe, from the evidence, that the plaintiff was in fault in bringing on the difficulty, yet, if they believe, from the evidence, that the defendant's retaliation was disproportionate to, and excessive of, the necessity or provocation received, they must find for the plaintiff." (2) "If the jury believe, from all the evidence, that the defendant brought on the difficulty, then he cannot invoke the doctrine of self-defense." ...
In commenting upon the propriety of the action and of these charges, this Court stated:
There may, no doubt, be cases of assault and battery, as well as of mere assault, which would sustain a civil action for damages, and yet not be punishable criminally, by indictment. An assault with an unloaded gun or pistol might be one of this character; as would also a battery resulting from the fault or negligence of the defendant, without any criminal intent. 2 Green. Ev. § 85; Chapman v. The State, 78 Ala.Rep. 463.... In civil actions, ... the rule obtains, that if the defendant was the aggressor, and brought on the difficulty, he can not invoke the doctrine of self defense, because it would be allowing him to take advantage of his own wrong. So, the doctrine [of self defense] being based on necessity, the party resorting to it can go no further, in doing damage or violence to his adversary, than what is reasonably necessary and unavoidable. His retaliation can not innocently be disproportionate to the necessities of the occasion, or excessive of the provocation received.... [Emphasis added.]
And in Carlton v. Henry, 129 Ala. 479, 29 So. 924 (1900), in applying the facts of the case to the applicable law of assault and battery, this Court declared that:
The act of Henry in thrusting the plaintiff being done in carrying out the unlawful purpose of beating the servant, was in itself unlawful and amounted to an actionable assault and battery without regard to whether it was designed to injure plaintiff. In the civil as distinguished from the criminal action an intent to injure is not essential to the liability of the person committing the assault. [Citations omitted.] ...
The distinction was again commented upon in McGee v. State, 4 Ala.App. 54, 58 So. 1008, 1009:
[W]e think that, at times, courts have fallen into error in applying, or in attempting to apply, the rules applicable only to civil actions for assaults and batteries or trespass to the person to the facts in criminal prosecutions. In a criminal prosecution for an assault and battery, except as hereinafter shown, the intent to injure is one of the essential elements of the offense; in civil actions, the intent, while pertinent and relevant, is not essential. [Citation omitted.]
Accord, Birmingham Ry., Light & Power Co. v. Coleman, 181 Ala. 478, 61 So. 890 (1913); Pizitz v. Bloomburgh, 206 Ala. 136, 89 So. 287 (1921); Honeycutt v. Louis Pizitz Dry Goods Co., 235 Ala. 507, 180 So. 91 (1938).
In Burge v. Forbes, 23 Ala.App. 67, 70, 120 So. 577 (1929), a civil action for assault based upon an arrest during which the officer pointed a pistol at the plaintiff, the court stated:
The intention to do immediate harm to the person of plaintiff appears not to be essential in an action for a civil assault.
The opinion of Professor Prosser expressed in his notable treatise, Handbook of the Law of Torts, § 8 (4th ed. 1971), that the concept of a "negligent assault and battery" is outmoded, has served neither to overrule the well-established Alabama doctrine nor that of other jurisdictions. The contemporary rule in Connecticut, for example, is that an actionable assault and battery may be committed under circumstances showing a reckless disregard of consequences, or committed negligently. Russo v. Porga, 141 Conn. 706, 109 A.2d 585 (1954); Cf. Alteiri v. Colasso, 168 Conn. 329, *592 362 A.2d 798 (1975). See 6A C.J.S. Assault and Battery, § 5 at 322 (1975).
This case was submitted to the jury on the theory that an agent of the City of Birmingham had used "excessive force" upon the plaintiff, that is, a force which was excessive. That is the equivalent of asserting an assault and battery not measured or patterned for the circumstances, or an unskilled response, whether the force used was, as the trial court charged, exerted because of the plaintiff's failure to respond to an order, or because the force was exerted in meeting a counterforce of the plaintiff. In either case, the lack of a response measured by the circumstances could have been due to his "unskillfulness" as an officer confronted by either of those circumstances. As "unskillful" is used in § 11-47-190, it means "lacking in skill or proficiency." Webster's Third New International Dictionary at 1510. Cf. Thomason v. Gray, supra. An assault and battery committed under either circumstance, because "unskilled," would be a negligent assault and battery because it would fall below that response which a skilled or proficient officer would exercise in similar circumstances. Hence, the cause of action alleged and proved fell within the conduct for which the legislature has prescribed a remedy under § 11-47-190.
The defendant contends that the trial court erred in refusing to give certain requested jury charges which dealt with assault and battery. We have examined these charges and have found that they were either abstract or were covered by the court's oral charge.
To the city's argument concerning the admissibility of two photographs of the plaintiff which were taken shortly after the incident in question, we must state that it does not appear that the trial judge abused his discretion in allowing their admission. See generally C. Gamble, McElroy's Alabama Evidence, § 207.01(2) (3rd ed.1977).
The judgment is affirmed.
AFFIRMED.
MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
TORBERT, C. J., dissents.
TORBERT, Chief Justice (dissenting).
I cannot agree that a battery may be a negligent tort.
The majority holds that an officer using excessive force against a prisoner has committed a negligent tort. I believe, however, that the majority's ruling is not sustained by the authorities. A battery is an intentional and nonconsensual touching of another, W. Prosser, Handbook of the Law of Torts § 9 (4th ed.1971), or the touching by one person of the person of another in rudeness or anger. Wilson v. Orr, 210 Ala. 93, 97 So. 133 (1923). Although a police officer is privileged to use that force the officer reasonably believes necessary to overcome resistance to his lawful authority, a police officer is guilty of a battery when he exceeds the privileged force by committing unwarranted violence on the person of his prisoner. Evans v. Walker, 237 Ala. 385, 187 So. 189 (1939); 6A C.J.S. Assault and Battery § 27 (1975); Restatement (Second) of Torts §§ 117, 132 (1965).
The Restatement (Second) of Torts defines "battery" as follows:
§ 18. Battery: Offensive Contact
(1) An actor is subject to liability to another for battery if
(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and
(b) an offensive contact with the person of the other directly or indirectly results.
(2) An act which is not done with the intention stated in Subsection (1,a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm.
*593 Restatement (Second) of Torts § 18 (1965) (emphasis supplied). Comment g further explains that an actor whose conduct is reckless or negligent "does not become liable [for battery] if it causes only an offensive contact." Restatement (Second) of Torts § 18, Comment g (1965). It is therefore clear that a battery is an intentional tort, see, W. Prosser, Handbook of the Law of Torts § 9 (4th ed.1971), but the majority holds that it is possible to have a negligent battery, citing, among the cases, Honeycutt v. Louis Pizitz Dry Goods Co., 235 Ala. 507, 180 So. 91 (1938), and Pizitz v. Bloomburgh, 206 Ala. 136, 89 So. 287 (1921). As the majority suggests, these cases do appear to recognize that there can be a negligent assault and battery. The cases, however, are grounded on negligence principles, and I believe that the term "assault and battery," as used in these cases, indicates only that recovery was sought for personal injury directly resulting from defendant's alleged negligence.
The Bloomburgh opinion did not include facts; however, in Honeycutt this Court applied the facts to determine whether the plaintiff's case was properly submitted to the jury on an assault and battery count. Defendant, as part of a holiday promotional program, sent an employee, dressed as Santa Claus, to distribute various items. The employee, while standing on the rear of a truck, threw candy into a crowd of several hundred, and one piece of candy struck plaintiff in the eye. Under these facts, this Court found sufficient evidence for plaintiff's verdict on the assault and battery count by holding:
It is settled in this jurisdiction that to maintain a civil action for an assault and battery, it is not essential that the infliction of the injury upon the plaintiff should be intended. And it can often be sustained by proof of a negligent act resulting in unintentional injury.

If the missiles thrownthe lollypops [sic]were of such nature and character as that they were liable to produce injury, and were thrown into the crowd of women and children with such force as to cause injury, the jury was warranted in finding the defendant liable under the third count of the complaint [for assault and battery].
Honeycutt v. Louis Pizitz Dry Goods Co., 235 Ala. 507, 509, 180 So. 91, 92 (1938) (citations omitted, emphasis supplied). From the foregoing, it is clear the Honeycutt court simply approved a count for negligent infliction of personal injury.
The tort law evolutionary process explains the older references to assault and battery as negligent torts. The subject is discussed by Dean Prosser:
The procedural distinction between trespass and case has long been antiquated, although some vestige of it still survives in a few states which retain common law pleading in a modified form. Modern law has almost completely abandoned the artificial classification of injuries as direct or indirect, and looks instead to the intent of the wrongdoer, or to his negligence. The first step was taken when the action on the case was extended to include injuries which were not intended but were merely negligent, and were inflicted directly and immediately. Because of the greater convenience of the action, it came to be used quite generally in all cases of negligence, while trespass remained as the remedy for the greater number of intentional wrongs. Terms such as battery, assault and false imprisonment, which were varieties of trespass, came to be associated with intent, and negligence emerged as a separate tort. The shift was a gradual one, and the courts seem to have been quite unconscious of it. When, in the nineteenth century, the old forms of action were replaced in most jurisdictions by the modern code procedure, the new classification remained. There is still some occasional confusion, and some talk of a negligent "assault and battery," but in general these terms are restricted to cases of intent.
W. Prosser, Handbook of the Law of Torts § 8, at 29-30 (4th ed.1971) (footnotes omitted). As a footnote to the foregoing discussion, Professor Prosser wrote: "A later example *594 of this use of an outmoded terminology [negligent assault and battery] is Honeycutt v. Louis Pizitz Dry Goods Co., 1938, 235 Ala. 507, 180 So. 91, which finds assault and battery where plaintiff was negligently, but not intentionally, struck by a lollipop." W. Prosser, supra, at 30 n.15. I agree with Professor Prosser's analysis of cases using the terms "negligent assault and battery," and I would hold that assault and battery are purely intentional torts.
The question then becomes whether Code 1975, § 11-47-190, permits municipal liability for an intentional tort. I believe that the very recent case of Neighbors v. City of Birmingham, 384 So.2d 113 (Ala.1980), settled the question. I take Neighbors as an unassailable authority that § 11-47-190 precludes a suit against a municipality for an intentional tort, and I would hold that defendant was entitled to have its motion for directed verdict granted.
In Neighbors, the issue was whether a municipality could be liable for malicious prosecution. Mr. Neighbors was arrested by Birmingham police officers on a charge of public drunkenness. He was acquitted of the charge, and subsequently he filed suit for malicious prosecution against Birmingham and the police officers. The trial judge dismissed the complaint for failure to state a claim, and Mr. Neighbors appealed. We affirmed the trial judge because § 11-47-190 made municipalities liable only for the "neglect, carelessness, or unskillfulness" of their employees. The court gave effect to the plain meaning of the statute and held that Birmingham could not be liable for malicious prosecution.
The Neighbors court, discussing the importance of Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), said:
Appellant insists that McCarter v. City of Florence, [216 Ala. 72, 112 So. 335 (1927), which held that a municipality was not liable for malicious prosecution] was overruled by this Court's decision in Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975), a decision which he contends absolutely abolished governmental immunity in Alabama. We do not agree. Jackson abolished the judicial doctrine of municipal immunity, but recognized "... the authority of the legislature to enter the entire field, and further recognize[d] its superior position to provide with proper legislation any limitations or protections it deems necessary...." 294 Ala. 592, at 600, 320 So.2d 68, at 75.
In so holding, Jackson gave effect to former Tit. 37, § 502, now Code 1975, § 11-47-190, a legislative effort to impose liability on municipalities for the negligence of their employees, which had been thwarted by the interpretation placed on it by the courts.
. . . .
Section 11-47-190 remains the pertinent legislative enactment. It limits the liability of municipalities to injuries suffered through "neglect, carelessness or unskillfulness." To construe that language to include an action for malicious prosecution would be to expand the words beyond their normal meaning. This we decline to do.
Neighbors v. City of Birmingham, 384 So.2d at 113-14. The rule to be gleaned from the Neighbors case, then, is that by enacting § 11-47-190 the Legislature abolished municipal immunity from liability for negligent torts and not for intentional torts.
The Neighbors case did however, call into question the continued viability of one rule presumably implicit in Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). In Jackson, it was alleged that a Florence police officer negligently assaulted (Count I) or willfully and wantonly assaulted (Count II) the plaintiff by the use of excessive force. We reversed in whole the trial judge's sustaining of defendant City's demurrer and its motion to dismiss. If our reversal in Jackson could be construed as approving Count II, which alleged an intentional tort, then I believe Neighbors settled that § 11-47-190 does not allow suit against a municipality for the intentional tort of its agent.
In the area of municipal immunity from lawsuit, the legislative province is clear. *595 Jackson v. City of Florence, 294 Ala. 592, 320 So.2d 68 (1975). The Legislature has the right to restrict municipal liability, and I would not interpret the legislative directive making municipalities liable for "neglect, carelessness or unskillfulness" to include liability for intentional conduct. As such, I would hold that Code 1975, § 11-47-190, gives no cause of action for what have traditionally been regarded as intentional torts.
Here, plaintiff alleged and sought to prove that, in an effort to coerce compliance with the jail's rules, defendant's police officer beat and kicked plaintiff without justification, and that the blows caused plaintiff serious injury. In other words, plaintiff's theory of recovery is that defendant's police officer used excessive physical force on plaintiff's person. Therefore, plaintiff does not seek recovery for defendant's negligence, but instead, seeks recovery for the intentional tort of battery. For this reason, § 11-47-190 precludes plaintiff's cause, and I would hold that the trial court should have granted defendant's motion for directed verdict.
NOTES
[*] Code 1975, § 11-47-190, provides in pertinent part:

No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless said injury or wrong was done or suffered through the neglect, carelessness or unskillfulness of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his duty.